IN RE the MARRIAGE OF:

Pam Anita COOK, Petitioner-Respondent,

v.

Roger Paul COOK, Respondent-Appellant-Petitioner.

Supreme Court

*No. 95–1963. Oral argument January 9, 1997.—Decided March 19, 1997.*

(Also reported in 560 N.W.2d 246.)

For the respondent-appellant-petitioner there were briefs by *Michael J. Briggs* and *Briggs Law Office*, Madison and oral argument by *Michael J. Briggs*.

For the petitioner-respondent there was a brief by *Richard J. Auerbach* and *Auerbach & Porter*, Madison and oral argument by *Richard J. Auerbach*.

¶ 1. SHIRLEY S. ABRAHAMSON, Chief Justice. This is a review of a published decision of the court of appeals[1] affirming an order of the Circuit Court for Green County, David G. Deininger, Judge, determining property division and child support in the parties' divorce action. Roger Paul Cook, the husband, objects to that part of the circuit court's order which awarded a portion of the military retired pay to his former wife, Pam Anita Cook, in the equitable division of the property and included his portion of the military retired pay as income for purposes of calculating his obligation for child support. The court of appeals affirmed the order of the circuit court, rejecting the husband's contention that including his portion of the military retired pay as income for purposes of calculating his child support obligation constitutes impermissible "double-counting."

¶ 2. We affirm the decision of the court of appeals. We conclude that military retired pay must be considered as property for purposes of property division unless otherwise excluded by law and may be considered as income to the recipient for purposes of calculating child support.

¶ 3. The facts are not in dispute. The parties were married for 12 years; the divorce action was com-

---

[1] *Cook v. Cook*, 201 Wis. 2d 72, 547 N.W.2d 817 (Ct. App. 1996).

menced in 1993 and judgment entered in 1995, when the parties' children were three and five years old. At the time of the judgment the wife, the custodial parent, had a gross income of $1,836 per month and required more than $800 per month for the children's day care. The husband had a gross income of $1,212 per month from the military retired pay and expected to earn, soon after the divorce, an additional $2,334 to $2,500 per month from his work as an over-the-road truck driver.

¶ 4. The circuit court ruled that each party was to receive one half of 11/23 of the husband's military retired pay as it was paid monthly.[2] The remaining 12/23 of the military retired pay was awarded entirely to the husband. The remainder of the parties' property was divided equally, consistent with their agreement.

¶ 5. Applying the child support percentage guidelines to each party's share of the military retired pay, the circuit court determined that the husband, as the non-custodial parent, was obliged to pay the wife 25% of his gross income from all sources for the support of their children. Monthly payments to the husband of military retired pay were determined to be part of his gross income. The circuit court denied the wife's request for a child support award greater than the guidelines percentage to assist in the sizable day care expense necessitated by her full-time employment. The circuit court reasoned that the percentage standard applied to the husband's gross income (including military retired pay) would produce sufficient funds for

[2] The parties do not challenge this division, which is based on the number of years of the marriage during which the husband was in military service. They dispute whether military retired pay is subject at all to property division on divorce.

child support once the husband began receiving additional income from his new employment.

¶ 6. This case presents us with two related questions. First, is military retired pay property for purposes of property division upon divorce? The husband contends that his military retired pay should be considered as income only and not as property subject to division.

¶ 7. Second, if military retired pay is divided in the property distribution, may the non-custodial spouse's share of the military retired pay be considered part of that spouse's gross income for the purpose of calculating his or her child support obligation? The husband argues that if the military retired pay is subject to property division then any portion awarded to him should not be considered as income for purposes of calculating the amount of child support he is to pay.

¶ 8. A third question raised by the court of appeals and briefed at this court's request is whether the court of appeals may overrule, modify or withdraw language from one of its published decisions. For the reasons set forth we conclude that the court of appeals does not have this power.

I.

¶ 9. The division of marital property and the calculation of child support are matters generally left to the sound discretion of the circuit court. *Jasper v. Jasper* 107 Wis. 2d 59, 63, 318 N.W.2d 792 (1982); *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160 (1980). That discretion, however, must be exercised by applying correct legal standards. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). An exercise of discretion based on a mistaken view of the

law is an erroneous exercise of discretion. *Schmid v. Olsen*, 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983). Because the husband does not contend that the circuit court erroneously exercised its discretion except in regard to the legal standards it applied to the husband's military retired pay, we treat this case as presenting solely issues of law. We determine the legal issues independently of the circuit court and the court of appeals, benefiting from the analyses of those courts.

## II.

¶ 10. The husband first contends that the circuit court erred as a matter of law by considering the military retired pay as property subject to property division under Wis. Stat. § 767.255 (1991–92).[3] We begin with an evaluation of relevant federal and Wisconsin statutes.

¶ 11. Persons who serve in the armed forces for a specified period, generally 20 years, are entitled to receive military retired pay upon leaving the service. 10 U.S.C. § 3911 et seq. Military retired pay is not available as a lump sum; it is taxable as income and terminates on the death of the retiree. A retiree is entitled to military retired pay even if he or she takes a post-retirement job, except that military retired pay temporarily ceases if the retiree returns to active duty.

¶ 12. In *McCarty v. McCarty*, 453 U.S. 210 (1981), the United States Supreme Court held that the federal statutory scheme and the Supremacy Clause preclude states from dividing military retired pay as an asset of a marriage. Congress responded to the *McCarty* decision by enacting the Uniformed Services

---

[3] All further Wisconsin statutory references are to the 1991–92 Statutes unless otherwise noted.

Former Spouses Protection Act, 10 U.S.C. § 1408, which reversed the effect of *McCarty* and allowed a state court to divide military retired pay as part of a property division in a divorce. The Act provides that "a court may treat disposable retired pay payable to a member. . .either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). Federal law thus no longer precludes Wisconsin from treating military retired pay as property subject to property division on divorce.[4]

¶ 13. We now examine Wisconsin law governing property division on divorce. Under Wisconsin law, upon every judgment of divorce a circuit court shall divide the property of the parties and divest and transfer the title of such property. Wis. Stat. § 767.255. Certain specified property is not subject to property division except in the case of hardship. *Id.* In regard to all other property, a circuit court is to presume that the property is to be divided equally between the parties but may alter this distribution after considering various factors. *Id.*

¶ 14. With these statutory directives in mind we begin our inquiry into whether military retired pay is income or is property subject to division on divorce.

¶ 15. Military retired pay has characteristics of both income and property. A military retiree has a right to a future stream of income attributable to past employment; the amount of the retiree's benefit is tied to the compensation the retiree received while in service. 10 U.S.C. § 3991.

---

[4] 10 U.S.C § 1408 maintains some limitations on state court treatment of military retired pay. Because the husband does not suggest that the circuit court's treatment of retired pay in this case is in conflict with federal law, we need inquire no further.

¶ 16. Military retired pay is similar to private sector retirement plans. Although, as the husband stresses, the military retiree is not entitled to exchange retired pay for a lump sum, the same is true in many private sector retirement plans. Similarly, it is of no moment that military retired pay terminates at the retiree's death or if the retiree returns to active service. These characteristics do not divest the military retired pay of its status as a retirement plan, comparable to private sector plans.

¶ 17. It is settled law in this state that private sector retirement plans earned through a spouse's employment during a marriage must be considered in the property division at divorce. The court has noted that in "many divorce situations, the pension rights of one or both employee spouses are the most significant marital assets owned by the couple," and that Wisconsin "is in the forefront of the common-law-property states recognizing the rights of the non-employee spouse [in the pension]." *Bloomer v. Bloomer*, 84 Wis. 2d 124, 129, 267 N.W.2d 235 (1978).

¶ 18. In *Steinke v. Steinke*, 126 Wis. 2d 372, 378–79, 376 N.W.2d 839 (1985), 127 Wis. 2d 444, 379 N.W.2d 853 (1986) (on reconsideration), the court addressed "the proper characterization of Mr. Steinke's pension plan either as property (and, therefore, part of the marital estate subject to division) or as income." The pension in *Steinke*, like the military retired pay in the present case, was being paid to the husband at the time of divorce. The court held that, "as a matter of law, the value of a spouse's interest in a pension fund must be included by the trial court in the division of the property." *Steinke*, 126 Wis. 2d at 380. In *Thorpe v. Thorpe*, 123 Wis. 2d 424, 367 N.W.2d 233 (Ct. App.

1985), the court of appeals affirmed a circuit court's property division of military retired pay.

¶ 19. According to Professor Grace Blumberg, virtually all states classify military retired pay as subject to property division upon divorce, as they do other pensions. Grace Ganz Blumberg, *Intangible Assets Recognition and Valuation, in* 2 *Valuation and Distribution of Marital Property* § 23.02[6] n.225, at p. 23–54 (Gary N. Skoloff et al. 2/95) (collecting cases).[5]

■

¶ 20. For purposes of the equitable division of property upon divorce, we see no distinction between private pension plans and military retired pay. We therefore hold that unless otherwise excluded by law, military retired pay must be considered by the circuit court in dividing the property in a divorce proceeding.

### III.

¶ 21. We now turn to the principal issue in dispute: whether military retired pay which has been divided between the spouses in the property division may be considered as income in calculating a spouse's obligation for child support. The husband contends that to include his portion of the military retired pay as income in calculating the amount of child support he is obligated to pay would impermissibly "double-count" his portion of the military retired pay.

¶ 22. We again begin with the relevant statutes. Federal law allows states to include military retired pay in calculating child support, just as it allows consideration of military retired pay in the determination

---

[5] *See also* Maj. Guilford, *Family Law Note: Uniformed Services Former Spouses' Protection Act Update,* Army Lawyer, June 1989, at 43 (collecting cases).

of a property division. 10 U.S.C. §§ 1408(a)(2)(B)(i), (c)(1), (d)(1), (d)(5), (e)(6).

██

¶ 23. In Wisconsin, a circuit court is required to order either or both parents to pay an amount reasonable or necessary to fulfill the duty of child support. Wis. Stat. § 767.25(1)(a) (1993–94).[6] Unless unfair to the child or a party, a circuit court shall determine child support payments using the percentage standards established by the Department of Health and Social Services. Wis. Stat. §§ 767.25(1j) and 46.25(9)(a) (1993–94); Wis. Adm. Code ch. HSS 80. A child support award established under the percentage standards is based on the payor's gross income, Wis. Adm. Code § HSS 80.03(1), which is defined to include "[m]ilitary allowances and veterans benefits. . .and [a]ll other income, whether taxable or not [except public assistance and child support received]." Wis. Adm. Code § HSS 80.02(13). Further, the statutes authorize a circuit court to consider all relevant financial information in determining child support payments. Wis. Stat. § 767.25(1g) (1993–94).

¶ 24. The husband in the present case concedes, and we agree, that his receipt of military retired pay is income under the administrative code for purposes of calculating child support. But, the husband argues, it is impermissible "double-counting" to include as income for purposes of calculating child support that portion of the military retired pay which was awarded to him in the property division on divorce.

---

[6] The legislature amended parts of Wis. Stat. § 767.25 after the commencement of the divorce action. The 1993–94 Statutes are applicable to the circuit court's child support order, entered in 1995.

¶ 25. The rule against impermissible "double-counting" was first set forth in *Kronforst v. Kronforst,* 21 Wis. 2d 54, 123 N.W.2d 528 (1963). In *Kronforst* the trial court awarded as part of the property division 49% of the cash value of the husband's profit-sharing trust to the wife and 51% to the husband. The trial court also directed the husband to pay permanent alimony from his income, which was limited to disability payments and proceeds of the retirement trust. The supreme court held that the trial court properly divided the husband's profit sharing trust but erroneously included the husband's share of the trust in the calculation of permanent alimony he owed his former wife. The supreme court stated: "Such an asset cannot be included as a principal asset in making division of the estate and then also as an income item to be considered in awarding alimony." *Id.* at 64.

¶ 26. The *Kronforst* "double-counting" rule has been interpreted in subsequent cases reviewing a division of property and an award of maintenance. The contours and rationale of the *Kronforst* rule are not clear. In *Leighton v. Leighton,* 81 Wis. 2d 620, 635, 261 N.W.2d 457 (1978), the court construed *Kronforst* as establishing that "it is not error to exclude an interest in a pension fund from the division of estate if it is considered as income in awarding alimony." In *Steinke,* the court concluded that this language in *Leighton* expanded the holding of *Kronforst* and to that extent was to be treated as dicta having no precedential effect. *Steinke,* 126 Wis. 2d at 382. The *Steinke* court stated the *Kronforst* rule as follows:

> *Kronforst* only established the rule prohibiting the double counting of an asset, once in property division and once in the maintenance award. It did not

create a rule that pension rights may be excluded
from the property division if they are included in
the maintenance award.

*Id.* In seeking to limit *Leighton*, the *Steinke* court
seems to have read *Kronforst* as mandating that pen-
sion assets be included in property division and
excluded from maintenance awards.

¶ 27. In *Olski v. Olski*, 197 Wis. 2d 237, 247, 540
N.W.2d 412 (1995), the court acknowledged and
affirmed *Kronforst*'s "double-counting" rule without
extensive discussion. The court, however, held that the
rule did not bar counting as income for determining
maintenance that portion of the proceeds from a pen-
sion received in the property division which was
attributable to post-divorce employment. *Id.* at 243.[7]

¶ 28. The court of appeals also has given uneven
treatment to the "double-counting" rule. The rule has
been applied to bar consideration of a divided asset for
purposes of calculating maintenance.[8] In other cases,
the court of appeals has "question[ed] whether the
*Kronforst* rule is absolute." *Pelot v. Pelot*, 116 Wis. 2d
339, 344–45, 342 N.W.2d 64 (Ct. App. 1983). In *Pelot*,
the court of appeals concluded that "if the. value of a

---

[7] *See also Hommel v. Hommel*, 162 Wis. 2d 782, 793, 471
N.W.2d 1 (1991) (income from assets awarded to spouse in prop-
erty division can be included as income for maintenance
determination); *LaRocque v. LaRocque*, 139 Wis. 2d 23, 34, 406
N.W.2d 736 (1987) (failure to explain adequately why wife must
liquidate non-income-producing assets to support herself while
husband keeps his retirement fund untouched is erroneous
exercise of circuit court discretion).

[8] *See, e.g., Hauge v. Hauge*, 145 Wis. 2d 600, 605–06, 427
N.W.2d 154 (Ct. App. 1988) (accounts receivable); *Overson v.
Overson*, 125 Wis. 2d 13, 20, 370 N.W.2d 796 (Ct. App. 1985)
(proceeds from sale of real estate).

pension fund is included in the property division, the court may consider it when making a maintenance award, although it must be considered differently from property which can be presently enjoyed." Others have also questioned the validity of the "double-counting" rule.[9]

¶ 29. It is unnecessary for purposes of our present inquiry to ascertain the precise scope of *Kronforst*'s "double-counting" rule. Through our review of the cases we derive two principles which are sufficient to demonstrate that the circuit court in the present case did not act inconsistently with a "double-counting" rule.

---

[9] Professor Grace Blumberg has analyzed the issue as follows:

> Jurisdictions that have accepted the husband's "double dipping" argument have done so in conclusory fashion, without any elaboration of the issue or discussion of the parity question. [citing *Kronforst*]. . .Once the property has been divided, a proper support determination requires that all the parties' income producing resources be taken into account. It is as immaterial that an income-producing asset was awarded to one party in the property distribution as it is that an income producing asset was acquired before marriage or by inheritance or after divorce. That an asset qualifies, for any of those reasons, as a spouse's separate, or individual, property does not insulate it from the other spouse's support claims. [citations omitted]

Grace Ganz Blumberg, *The Relationship Between Property Distribution and Spousal and Child Support, in* 2 *Valuation and Distribution of Marital Property* § 41.07[3], at pp. 41–69 to 41–71 (Gary N. Skoloff et al. 4/90).

*See also White v. White*, 237 Cal. Rptr. 764, 767–68 (Cal. App. 1987) (limiting application of "double-counting fallacy"); *Innes v. Innes*, 569 A.2d 770, 789–90 (N.J. 1990) (Stein, J., concurring and dissenting) ("double-counting" bar should be "presumptive, but not absolute").

¶ 30. First, because of the infinite range of factual situations facing circuit courts in dividing property and determining maintenance and child support, some cases have found it inappropriate to enforce an absolute bar against counting a pension in the property division and in the maintenance or support determination. Such an inflexible rule runs counter to the equitable nature of these determinations and to purposes underlying the broad legislative authorization that the circuit court consider relevant financial information in dividing the property and setting the level of maintenance and child support. Rather, the "double-counting" rule serves to warn parties, counsel and the courts to avoid unfairness by carefully considering the division of income-producing and non-income-producing assets and the probable effects of that division on the need for maintenance and the availability of income to both parents for child support.

¶ 31. Second, a review of the cases convinces the court that the *Kronforst* "double-counting" rule does not apply in the context of child support. Property division, maintenance and child support, although related, differ from each other. A property division distributes assets owned by the parties in an equitable fashion. Maintenance and child support provide for support, usually from current income. Maintenance, however, looks to the relative positions of the former spouses, while child support is based on the needs of the children and the financial abilities of the parents. Nevertheless, there is significant overlap in the three. The statutes require a circuit court in setting both maintenance and child support to consider the property division. Wis. Stat. §§ 767.25(1m)(b), 767.26(3) (1993–94).

██

¶ 32. We agree with the circuit court in the present case and with Judge Gartzke's concurring opinion in the court of appeals distinguishing between child support and maintenance. The property division is an allocation of assets between the parents; each spouse receives something from the division. In the case at bar each spouse got a fair share of the parties' assets, including the military retired pay.

██

¶ 33. In contrast, the child of divorced parents receives nothing from the property division. A child support order gives the child fair support from the non-custodial parent's income including pension proceeds such as military retired pay. Thus, when a circuit court treats a pension which was subject to property division as income for child support purposes, the pension is counted for the first time between the parent and the child. As between the parent and the child, the pension is not being counted twice. Accordingly we conclude that a rule against "double-counting" does not bar consideration of the pension both as property in the property division and as income in calculating child support.

¶ 34. The cases applying the *Kronforst* rule have, with the exception of *In re Marriage of Maley*, 186 Wis. 2d 125, 519 N.W.2d 717 (Ct. App. 1994), dealt with property division and maintenance or family support, not property division and child support. In *Maley*, real property was awarded to the non-custodial spouse in the property division and was sold after the divorce judgment. The spouse realized a capital gain, although the proceeds of the sale were less than the value attributed to the property for purposes of the property division. The court of appeals held that under these

facts the capital gain from the sale was not income for purposes of child support.

¶ 35. The court of appeals in the present case noted that *Maley* had struck new ground by applying the "double-counting" rule to the child support context. But the court of appeals distinguished *Maley* from the present case on factual grounds: the property in *Maley* was awarded to *one* of the parties and the property was sold *after* judgment. *Cook v. Cook*, 201 Wis. 2d 72, 78, 547 N.W.2d 817 (Ct. App. 1996). We, like Judge Gartzke, are not persuaded by this distinction.[10]

¶ 36. We conclude that the court of appeals read its prior decision in *Maley* too broadly. In *Maley* addressing child support, as in *Pelot* addressing maintenance, the court of appeals did not adopt an inflexible rule barring "double-counting." In *Maley* the court of appeals refused to adopt an inflexible rule that capital gains from sale of an asset awarded in property division cannot be counted as income for purposes of child support. Rather, the court of appeals urged a flexible, case-by-case determination of whether gains from the sale of an asset should be considered as income for child support purposes. The *Maley* court of appeals thus concluded:

> We do not hold that any gain realized from a sale of an asset counted as property in the divorce judgment cannot be counted as income. Whether gains from the sale of an asset counted as property in the divorce judgment can be counted as income for sup-

---

[10] Judge Gartzke concluded that the "distinctions the majority draws between the facts of this case and those in *Maley* are insubstantial." *Cook*, 201 Wis. 2d at 79 (Gartzke, J., concurring). He would have overruled *Maley* had he concluded that the court of appeals had that power. *Id.* at 80.

port purposes is a fact-sensitive question to be resolved on a case-by-case basis. Thus, we do not address the issue of whether gains from a sale of an asset for greater than the value placed on it in the property division may be counted as income for support purposes because that fact scenario is not before us.

*Maley*, 186 Wis. 2d at 128.[11]

¶ 37. We agree with this case-by-case approach. The circuit court must carefully exercise its discretion to fashion an equitable scheme of property division and child support. It must be free to do so in the manner most consistent with the needs of the children and the resources of the parents in each case. Although they are often analyzed separately, it is critical that property division and child support (and maintenance, if any) be considered together. As Professor Blumberg explains: "[T]he ultimate test of a negotiated settlement or decree is not how well any one issue has been resolved, but instead whether all the economic components work together to provide adequately for the needs of all members of the now-fragmented family."[12]

---

[11] The *Maley* court also stated what appears to be an inflexible "double-counting" rule: "An asset and its income stream may not be counted both as an asset in the property division and as part of the payor's income from which support is paid." *In re Marriage of Maley*, 186 Wis. 2d 125, 128, 519 N.W.2d 717 (Ct. App. 1994). This statement is incompatible with the case-by-case approach stated in *Maley* and affirmed in the case at bar.

[12] Grace Ganz Blumberg, *The Relationship Between Property Distribution and Spousal and Child Support, in* 2 *Valuation and Distribution of Marital Property* § 41.04 [1], at p. 41–37 (Gary N. Skoloff et al. 4/90).

¶ 38. Although we do not agree with its effort to distinguish *Maley*, we agree with the court of appeals' conclusion in the case at bar:

> [T]he goal of achieving fairness between the parties, which is at the heart of the rule against double-counting, will not be met by excluding the income stream awarded to Roger [the husband] in determining his obligation for child support when the law assumes Pam [the wife] will be using her share of the marital portion of the pension to support the children.

*Cook*, 201 Wis. 2d at 78.

¶ 39. This focus on fairness and need guided the circuit court in this case. The circuit court appropriately presumed that the wife, like the husband, would expend on child support a portion of her income, including her share of the military retired pay.[13] The circuit court crafted a careful scheme of property division and child support in which the income-producing property was fully and equitably considered. Because it was important to draw on the income stream from this asset to provide adequate support for the children, the circuit court properly considered the military retired pay in determining child support.

██

¶ 40. We hold that the husband's military retired pay must be considered as property for purposes of property division and may be considered as his income

---

[13] The circuit court referred to the wife's "25% 'deemed' contribution to the support of her children." Findings and Decision, March 30, 1995, at 3. The regulations state that the percentage standard "expects that the custodial parent shares his or her income directly with their children." Wis. Adm. Code ch. HSS 80 Preface.

for purposes of calculating child support. Accordingly, we affirm the decision of the court of appeals.

## IV.

¶ 41. A recurring issue raised by the court of appeals in the present case and in other recent decisions and certifications[14] to this court is whether the court of appeals has the power to overrule, modify or withdraw language from a previously published decision of the court of appeals. Accordingly this court asked the parties to brief this issue.

¶ 42. To answer the question posed we must examine the constitutional and statutory provisions defining the authority of the court of appeals. The court of appeals was created in 1977 by amendment to the Wisconsin constitution. Article VII, section 2 provides that the judicial power of the states is vested in a unified system consisting of one supreme court, a court of appeals, a circuit court, and trial and municipal courts. Article VII, section 5(3) of the Wisconsin constitution prescribes the appellate and original jurisdiction of the court of appeals.[15]

¶ 43. The constitution and statutes provide that the judges of the court of appeals are elected from dis-

---

[14] *See* certification in *State v. Johnson*, Nos. 95–0266-CR and 95–0382 (Ct. App. Jan. 18, 1996).

[15] The appeals court shall have such appellate jurisdiction in the district, including jurisdiction to review administrative proceedings, as the legislature may provide by law, but shall have no original jurisdiction other than by prerogative writ. The appeals court may issue all writs necessary in aid of its jurisdiction other than by prerogative writ. The appeals court may issue all writs necessary in aid of its jurisdiction and shall have supervisory authority over all actions and proceedings in the courts in the district.

Wis. Const. art. VII, sec. 5(3).

tricts, Wis. Const. art. VII, § 5, and that the districts of the court of appeals sit in different parts of the state. Nevertheless the constitution has been interpreted as establishing the court of appeals as a unitary court. "The constitutional and statutory provisions clearly set forth the mandate that the Court of Appeals function as a single court under a chief judge and not function as four separate courts." *In re Court of Appeals*, 82 Wis. 2d 369, 371, 263 N.W.2d 149 (1978).

¶ 44. The statute provides that officially published opinions of the court of appeals shall have statewide precedential effect. Wis. Stat. § 752.41(2) (1995–96). *See also* Wis. Stat. (Rule) § 809.23 (1995–96) (publication of opinions).

¶ 45. Thus, the principle of *stare decisis* is applicable to the decisions of the court of appeals. The principle of *stare decisis* does not, however, answer the question before us because *stare decisis* contemplates that under limited circumstances a court may overrule outdated or erroneous holdings.[16]

¶ 46. Judges of the court of appeals have responded differently to the question of the court of appeals' ability to overrule, modify or withdraw language from erroneous past precedent. Judge Gartzke in his concurring opinion in the present case opines that most judges of the court of appeals believe, as he does, that the court of appeals may not overrule a prior decision of the court of appeals.[17] Judges Moser, Sullivan and Fine have concluded that even though the

---

[16] *State v. Stevens*, 181 Wis. 2d 410, 442, 511 N.W.2d 591 (1993) (Abrahamson, J., concurring) (citing *Schwanke v. Garlt*, 219 Wis. 367, 371, 263 N.W. 176 (1935); *Bielski v. Schulze*, 16 Wis. 2d 1, 11, 114 N.W.2d 105 (1962); *Prah v. Maretti*, 108 Wis. 2d 223, 237–238, 321 N.W.2d 182 (1982)).

[17] *Cook*, 201 Wis. 2d at 80 (Gartzke, J., concurring).

court of appeals had previously erred it was required to follow the erroneous opinion.[18]

¶ 47. Judge Brown has written that if a panel "feels that the written decision of another panel is wrong, it is probably better to write a decision following, although criticizing, that panel than to certify the issue."[19]

¶ 48. Judge Dykman reports "an evolving consensus among court of appeals publication committee members that the court of appeals is powerless to overrule its erroneous decisions."[20] Judge Dykman, disagreeing with this consensus and supporting the view that the court of appeals may overrule its prior published opinions,[21] posits two reasons for the conclusion that the court of appeals cannot overrule, modify or withdraw language from its prior published opinions: First, a published opinion is binding. Second, the

---

Judges Dykman and Eich were apparently persuaded in another case that a district has the power to withdraw language from or to overrule a statement in a previously published opinion but should apply the principles of stare decisis. *Kimps v. Hill*, 187 Wis. 2d 508, 516, 523 N.W.2d 281 (Ct. App. 1994). For the supreme court decision in this case see *Kimps v. Hill*, 200 Wis. 2d 1, 546 N.W.2d 151 (1996).

[18] *Ranft v. Lyons*, 163 Wis. 2d 282, 299–300 n.7, 471 N.W.2d 254 (Ct. App. 1991).

[19] Richard S. Brown, *Allocation of Cases in a Two-Tiered Appellate Structure: The Wisconsin Experience and Beyond*, 68 Marq. L. Rev. 189, 229 (1985). *See also Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 850, 454 N.W.2d 55 (Ct. App. 1990) (Judges Brown, Scott and Nettesheim) ("We çannot disregard that precedent. The published decisions of any Wisconsin court of appeals panel have binding effect on all panels of this court.").

[20] *Linville v. City of Janesville*, 174 Wis. 2d 571, 589, 497 N.W.2d 465 (Ct. App. 1993) (Dykman, J., dissenting).

[21] *Id.* at 589–92.

power to overrule, modify or withdraw language from a prior published opinion might "be abused, leading to a situation where the precedential effect of an opinion would last only until the issue arose before another panel."[22] Judge Dykman is not persuaded by either reason. According to Judge Dykman, the statutory mandate that published opinions are binding does not resolve the question of the power to overrule. And, he believes, the stabilizing effect of precedent would not be lost because overruling erroneous past precedent would not "become everyday fare for the court of appeals."[23]

¶ 49. Judge Dykman argues that undesirable consequences flow from failing to recognize the power of the court of appeals to overrule, modify or withdraw language from a prior published opinion. The court of appeals has, he believes, avoided overruling cases by artificially limiting a holding, by drawing irrelevant distinctions or by ignoring prior rulings.[24]

¶ 50. Judge Dykman's concerns are valid. Yet, we do not resolve this debate on these policy grounds. Rather, we believe the proper interpretation of the constitutional and statutory authority of the court of appeals lies in an analysis of the functions of the court of appeals and the supreme court. The court of appeals, a unitary court, has two functions. Its primary function is error correcting. Nevertheless under some circumstances it necessarily performs a second function, that of law defining and law development, as it adapts the common law and interprets the statutes and federal and state constitutions in the cases it decides.

---

[22] *Id.* at 590.

[23] *Id.* at 591.

[24] *Id.* at 592.

¶ 51. In contrast, the supreme court's primary function is that of law defining and law development. The supreme court, "unlike the court of appeals, has been designated by the constitution and the legislature as a law-declaring court." *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983). The purpose of the supreme court is " 'to oversee and implement the statewide development of the law.' " *State v. Schumacher*, 144 Wis. 2d 388, 405, 424 N.W.2d 672 (1988) (quoting *State v. Mosley*, 102 Wis. 2d 636, 665, 307 N.W.2d 200 (1981)). The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.

¶ 52. If the court of appeals is to be a unitary court, it must speak with a unified voice. If the constitution and statutes were interpreted to allow it to overrule, modify or withdraw language from its prior published decisions, its unified voice would become fractured, threatening the principles of predictability, certainty and finality relied upon by litigants, counsel and the circuit courts. Further, with the ability to rely on the rules set out in precedent thus undermined, aggrieved parties would be encouraged to litigate issues multiple times in the four districts.

¶ 53. Four principles are clear: The court of appeals is a unitary court; published opinions of the court of appeals are precedential; litigants, lawyers and circuit courts should be able to rely on precedent; and law development and law defining rest primarily with the supreme court. Adhering to these principles we conclude that the constitution and statutes must be read to provide that only the supreme court, the high-

est court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals. In that way one court, not several, is the unifying law defining and law development court.

¶ 54. The court of appeals, however, is not powerless if it concludes that a prior decision of the court of appeals or the supreme court is erroneous. It may signal its disfavor to litigants, lawyers and this court by certifying the appeal to this court, explaining that it believes a prior case was wrongly decided. Alternatively, the court of appeals may decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided.[25]

¶ 55. For the reasons set forth we conclude that the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed. ·

[25] *See, e.g.*, Robert J. Martineau and Richard R. Malmgren, *Wisconsin Appellate Practice* § 2201 at 135 (1978).