# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP819-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>　　　　Plaintiff-Respondent,<br>　　v.<br>Wilson P. Anderson,<br>　　　　Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 307 Wis. 2d 244, 959 N.W.2d 93
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 2, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 17, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | David A. Feiss |

JUSTICES:
Per curiam. ROGGENSACK, J., filed a dissenting opinion.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *David J. Susens,* assistant state public defender. There was an oral argument by *David J. Susens,* assistant state public defender.

For the plaintiff-respondent, there was a brief filed by *Kara L. Janson,* assistant attorney general, with whom on the brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Kara L. Janson,* assistant attorney general.

An amicus curiae brief was filed by *James E. Goldschmidt, Ellen E. Anderson, Elise A. Ashley,* and *Quarles & Brady LLP,* Milwaukee, for the National Disability Rights Network.

**2023 WI 44**

No. 2020AP819-CR
(L.C. No. 2020CM939)

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Wilson P. Anderson,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 2, 2023**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 PER CURIAM. Wilson P. Anderson petitioned for review of a court of appeals decision, State v. Anderson, No. 2020AP819-CR, unpublished slip op. (Wis. Ct. App. Mar. 16, 2021), that affirmed the circuit court's order authorizing the involuntary administration of medication to restore Anderson's competency. In its briefing and arguments to this court, the State conceded that "it failed to meet its burden under Sell" at Anderson's competency hearing, and the circuit court had therefore erred when it ordered involuntary medication. See Sell v. United States, 539 U.S. 166 (2003). Accordingly, we summarily reverse the decision of the court of appeals, and

remand the cause to the circuit court with instructions to vacate the involuntary medication order.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

¶2 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* Today this court fails to perform its obligation to declare the law. Instead, it sidesteps the significant legal questions parties brought to us to decide and we accepted when we granted Wilson P. Anderson's petition for review. Because I would decide at least whether a psychiatrist is necessary to give an opinion on medicines that are sufficient to address Anderson's mental illness and bring him to competency, I respectfully dissent from this court's non-decision decision.

## I. BACKGROUND

¶3 In March 2020, Anderson hit a stranger on the head unprovoked, causing her bodily harm. Anderson was arrested, and the State filed criminal charges against him the following day.

¶4 The circuit court ordered a competency report,[1] which Forensic Psychologist Dr. Debora L. Collins completed. As part of her analysis, Dr. Collins reviewed the criminal complaint, Anderson's medical records, and a summary of his interactions with the Milwaukee County Behavioral Health Division. Dr. Collins also administered a competency evaluation through Anderson's cell door, due to Anderson's "level of agitation and erratic behavior." Anderson "shouted and yelled comments" throughout the evaluation. Dr. Collins was "not assured" that Anderson understood the purpose of the evaluation. Anderson's responses frequently were "slurred, mumbled, and/or otherwise incoherent."[2] Officers conveyed to Dr. Collins that Anderson

---

[1] Honorable Dennis R. Cimpl of the Milwaukee County Circuit Court presided.

[2] R. 3 at 2, 3.

1

fashioned his hand in the shape of a gun and pointed his hand at officers the day before the evaluation.

¶5 Dr. Collins filed a report in which she opined Anderson was not competent to understand the criminal proceedings against him or to aid in his defense. She recommended psychiatric treatment at a state mental health institute to restore competency but did not make any recommendations for involuntary medication. Anderson was not taking any medications at the time of his arrest, although he had had more than 35 episodes of county care since 2011. His records reflect a major mental illness often identified as Schizoaffective disorder.[3]

¶6 Anderson requested a contested competency hearing, and the court[4] ordered Dr. Collins to file an addendum to her report specifically outlining her opinion as to Anderson's need for involuntary medication. Dr. Collins' addendum stated Anderson was "not competent to make treatment decisions, including with respect to psychotropic medications,"[5] but Dr. Collins did not provide an opinion as to a course of treatment, medication dosages, or potential side effects that Anderson may experience.

¶7 On April 9, 2020, the court held a hearing regarding Anderson's competency to stand trial and whether to subject

---

[3] Id. at 3, 4.

[4] Honorable Frederick C. Rosa of the Milwaukee County Circuit Court presided.

[5] R. 4 at 2.

2

Anderson to an order for involuntary medication.[6] Dr. Collins was the only witness to testify. As part of her testimony, she answered various questions:

Q Dr. Collins, your degree is in psychology; is that right?

A Yes.

Q You have no medical training as a medical doctor; is that correct?

A I am not a medical doctor. I'm a psychologist.

Q You are not able to prescribe medications to anyone at this time in the course of your present employment?

A That is correct.[7]

¶8 Anderson did not object to Dr. Collins' testimony regarding his competency, but he objected to Dr. Collins' "medication order testimony."[8] The court overruled Anderson's objections and allowed Dr. Collins to testify "on both facets."[9] The court issued an involuntary medication and commitment order. The circuit court stayed the order for involuntary medication on April 16, 2020.[10]

¶9 Anderson appealed the order, asking the court of appeals "whether the State offered sufficient evidence to

---

[6] Honorable David Feiss of the Milwaukee County Circuit Court presided.

[7] R. 18 at 5, 6.

[8] Id. at 7.

[9] Id. at 8.

[10] R. 12 at 1.

3

support an order for involuntary medication under <u>Sell v. United States</u>."[11]  The court of appeals affirmed the circuit court's involuntary commitment order in an unpublished decision.  <u>State v. Anderson</u>, No. 2020AP160-CR, unpublished slip op. (Wis. Ct. App. Mar. 16, 2021).

¶10 Anderson petitioned this court for review, on the heels of <u>State v. Green</u>.  Because we granted <u>Green</u>'s petition for review, we held Anderson's case in abeyance until we released our opinion in <u>Green</u> on May 13, 2022.  <u>State v. Green</u>, 2022 WI 30, 401 Wis. 2d 542, 973 N.W.2d 770.  We ordered parties in <u>State v. Anderson</u> to submit simultaneous letter briefs as to whether our opinion in <u>Green</u> resolved their issues.

¶11 Anderson's May 27, 2022 letter brief argued our decision in <u>Green</u> did not resolve his issues.  He clarified that "[he] objects only to the court's reliance on the unconstitutional portions of [Wis. Stat.] § 971.14 [(2021-22)][12] and the state's failure to present a treatment plan and use evidence from a licensed physician to prove the second, third, and fourth <u>Sell</u> factors."  The State's letter brief of the same day clarified the State's position:  "[Anderson] contends that <u>Green</u> [396 Wis. 2d 658] requires the State to offer an individualized treatment plan to satisfy the <u>Sell</u> factors. . . . The State agrees with Anderson that the court of appeals here erred by not applying <u>Green</u> when determining whether the State

---

[11] <u>Sell v. United States</u>, 539 U.S. 166 (2003).

[12] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

proved the Sell factors." We granted Anderson's petition for review on September 13, 2022, ordered full briefing, and heard oral argument on April 17, 2023. Despite all of the above, today we disregard our constitutional function and we declare no law.

## II. DISCUSSION

### A. Standard of Review

¶12 We review whether the circuit court complied with the constitutional overlay of Sell v. United States, 539 U.S. 166 (2003) to Wis. Stat. § 971.14 under the facts of this case as a question of constitutional fact. As such, historic facts are upheld unless clearly erroneous, and whether those facts satisfy the constitutional standard in determination of the Sell factors is a question of law for our independent review. State v. Martwick, 2000 WI 5, ¶18, 231 Wis. 2d 801, 604 N.W.2d 552.

### B. General Principles

¶13 Wisconsin courts have a long history with criminal and civil commitment orders, as well as orders for involuntary medication in both contexts. Despite this long history, many questions remain unresolved.

¶14 In the criminal context (Wis. Stat. ch. 971), it is likely that the substantial number of cases that have come to us reflects the difficulty imposed on circuit courts that must balance a prisoner's significant liberty interest to avoid forced medication against the State's significant interest in prosecuting defendants for the commission of a serious crime. Sell, 539 U.S. at 178 (quoting Washington v. Harper, 494 U.S.

5

210, 236 (1990)). See e.g., State v. Anderson, No. 2020AP819-CR, Green, 401 Wis. 2d 542, State v. Yakich, 2022 WI 8, 400 Wis. 2d 549, 970 N.W.2d 12, State v. Fitzgerald, 2019 WI 69, 387 Wis. 2d 384, 929 N.W.2d 165.

¶15 The legal terrain reflects the complex reality of involuntary medication orders to regain competency. In Fitzgerald we comprehensively reviewed the constitutional foundation, as developed in case law. Id., ¶¶13-18. There, we underscored the root of an individual's "significant liberty interest" in avoiding antipsychotic drugs is secured by the Due Process Clause. Id., ¶13, (quoting Harper, 494 U.S. at 221). We then summarized Sell, which announced a four-factor test "to determine whether such [involuntary] medication is constitutionally appropriate," and which also asserted that "administration of drugs solely for trial competence purposes . . . may be rare." Fitzgerald, 387 Wis. 2d 384, ¶13 (citing Sell, 539 U.S. at 179, 180).

¶16 Accordingly, the four-factor test announced in Sell must be satisfied to meet the Constitution's high bar. Id. at 180-81. First, the court "must find that important governmental interests are at stake." Id. at 180. Second, the court must conclude "that involuntary medication will significantly further those [] state interests," by rendering the defendant competent to stand trial, but also that the drugs are "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." Id. at 181. Third, the court must conclude

6

that the involuntary medication is "necessary to further those interests" and that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." Id. Fourth, the court must conclude that administration of the drugs "is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." Id.

¶17 In Wisconsin, the court of appeals interpreted Sell as requiring an individualized treatment plan. Green, 396 Wis. 2d 658, ¶38. We did not address this particular issue in our review of Green, nor did we disturb it. Green, 401 Wis. 2d 542. Accordingly, Wisconsin appears to continue to require that the State provide an individual treatment plan when considering whether the second, third, and fourth Sell factors have been met. See Cook v. Cook, 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1997).

¶18 In addition, Wis. Stat. § 971.14 provides for pre-trial competency procedures. In broad strokes, the statute requires examination of the defendant, a report, a hearing, and commitment, as well as outlining the process of discharge. However, in Fitzgerald, we held § 971.14(3)(dm) is an insufficient standard upon which to base forced psychotropic medications. Fitzgerald, 387 Wis. 2d 384, ¶25.

¶19 We also reviewed each of the Sell factors in a way that demonstrates medical knowledge is required to provide relevant testimony for some of those factors. For example, in regard to the second Sell factor, "administration of the drugs is substantially likely to render the defendant competent to

7

stand trial" and "unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." Id., ¶27. In regard to the fourth Sell factor, the circuit court must find that the medication is "medically appropriate," i.e., "in the patient's best medical interest in light of his medical condition." Id., ¶29 (quoting Sell, 539 U.S. at 181).

### C. Anderson's Commitment

¶20 Whether testimony from a psychologist satisfies Sell is a question we have not addressed. Anderson brings this question to us squarely, as the circuit court ordered him to be involuntarily medicated based on the testimony of Dr. Collins, a psychologist. He objected at the circuit court, claiming that the testimony of a psychiatrist was necessary, and he objected here for the same reason.

¶21 In my view, a psychologist's testimony, while relevant to whether a defendant is incompetent to proceed to trial, is not sufficient to provide relevant testimony on at least the second and fourth Sell factors. A medical doctor's testimony is necessary, i.e., a psychiatrist's testimony is needed to meet the standards in the second and fourth Sell factors.

¶22 By declining to address Anderson's question regarding whether a psychologist is qualified to give testimony required by at least some of the Sell factors, this court shirks its duty to the parties and the public to declare what the law requires. We also disserve those closest to the mentally ill, those who seek help before an ill individual becomes more dangerous.

8

Today is another example of this court's increasing indifference to the obligations imposed upon the Wisconsin Supreme Court as an institution. I dissent because I would fulfill our obligation in a deeply complicated legal terrain and of incredible personal significance to those seeking guidance from this court.

¶23 Instead, the court chooses simply to vacate Anderson's involuntary medication order. A curious exercise, as the circuit court stayed it April 16, 2020. In addition, as the State informed this court in May 2022:

> According to CCAP, on August 14, 2020, the circuit court entered an Order of Conversion to Civil Commitment Proceedings [u]nder Wis. Stat. § 971.14(6)(b). Pursuant to that statute, a court that discharges a defendant from pretrial competency commitment 'may order that the defendant be taken immediately into custody by a law enforcement official and promptly delivered to a facility' for purposes of Chapter 51 or 55 proceedings. . . . No action has been taken on the State's prosecution since that time.

Section 971.14(6)(a) establishes the requirements for proceedings pursuant to paragraph b, and states, "If the court determines that it is unlikely that the defendant will become competent within the remaining commitment period, it shall discharge the defendant from the commitment and release him or her, except as provided in par. (b)."

¶24 Wisconsin Stat. § 971.14(6)(b) further provides, "Thereafter, detention of the defendant shall be governed by s. 51.15, 51.45(11), or 55.135, as appropriate." Accordingly, Anderson was discharged from the ch. 971 commitment and the involuntary medication order he asked us to review. Any

9

subsequent civil commitment or involuntary medication order to which Anderson may currently be subject is not part of the record.

### D. Choosing to Ignore This Court's Obligation

¶25 Lastly, I address this court's per curiam decision. The court states, "In its briefing and arguments to this court, the State conceded that 'it failed to meet its burden under Sell,' at Anderson's competency hearing, and the circuit court had therefore erred when it ordered involuntary medication." That may be so, but the State made this concession in the very letter briefing upon which this court ordered full briefing and argument.

¶26 In May 2022, the State informed this court it "agree[d] with Anderson that the court of appeals here erred by not applying Green when determining whether the State proved the Sell factors." There was nothing new this court could have learned about the State's position from full briefing if the court intended to decide the case on the State's concession, as it does today. But, by granting Anderson's petition for review with the issue "Did the involuntary medication order violate due process because the state failed to meet its burden to prove the second, third, and fourth Sell factors by clear and convincing evidence?" and ordering briefing, the parties likely understood an issue on review would be one of testimonial qualifications or of evidentiary sufficiency.

¶27 Anderson's briefing focused on the sufficiency of the State's evidence, as he argued testimony from a licensed

physician was required to meet Sell. Why now has the court refused to address at least this question? It is a recurring issue in commitment cases.

¶28 I am deeply troubled by this court's increasing reluctance to fulfill its obligation as a court of law-declaration. There are circuit courts serving all 72 counties in this state. Parties may exercise appellate rights in the courts of appeal, whose "primary function is error correcting." Cook, 208 Wis. 2d at 188. Wisconsin's four courts of appeal "function as a single court." In re Court of Appeals, 82 Wis. 2d 369, 371, 263 N.W.2d 149 (1978).

¶29 But the Supreme Court is the only court in Wisconsin primarily tasked with "law defining." Cook, 208 Wis. 2d at 189. This is the only court with the purpose of "oversee[ing] and implement[ing] the statewide development of the law," and the "only state court with the power to overrule, modify, or withdraw language from a previous supreme court case." Id.

¶30 Today, this court elects to do nothing despite the awesome responsibility——the obligation——to oversee and implement law declaration in Wisconsin. I regret that the parties' efforts to inform us of the legal issues presented fell on inattentive ears and that they have received no thoughtful response from this court.

### III. CONCLUSION

¶31 Today this court disregards its obligation to declare the law. Instead, it conveniently sidesteps the significant legal questions parties brought to us to decide and we accepted

11

when we granted Anderson's petition for review. Because I would decide at least whether a psychiatrist is necessary to give an opinion on medicines that are sufficient to address Anderson's mental illness, I respectfully dissent from this court's non-decision decision.

12