# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2020AP298-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent-Petitioner, |
| | v. |
| | Joseph G. Green, |
| | Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 396 Wis. 2d 658,957 N.W.2d 583
PDC No: 2021 WI App 18 - Published  (2021)

| | |
|---|---|
| OPINION FILED: | May 13, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 13, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Valerie Bailey-Rihn |

JUSTICES:

ROGGENSACK, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined, and in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined with respect to Part II.D., and in which DALLET, J., joined with respect to Part II.D. and ¶¶3 and 53.  ANN WALSH BRADLEY, J., filed an opinion concurring in part and dissenting in part, in which DALLET and KAROFSKY, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Kara L. Janson*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Kara L. Janson*.

For the defendant-appellant, there were briefs filed by *Kathilynne A. Grotelueschen,* assistant state public defender. There was an oral argument by *Kathilynne A. Grotelueschen.*

**2022 WI 30**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP298-CR
(L.C. No. 2019CF3109)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent-Petitioner,

  v.

Joseph G. Green,

    Defendant-Appellant.

**FILED**

**MAY 13, 2022**

Sheila T. Reiff
Clerk of Supreme Court

ROGGENSACK, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined, and in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined with respect to Part II.D., and in which DALLET, J., joined with respect to Part II.D. and ¶¶3 and 53. ANN WALSH BRADLEY, J., filed an opinion concurring in part and dissenting in part, in which DALLET and KAROFSKY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Limited in part; affirmed in part.*

¶1 PATIENCE DRAKE ROGGENSACK, J. Joseph G. Green was charged with first-degree intentional homicide, and was determined to be incompetent to stand trial. He was committed pursuant to Wis. Stat. § 971.14 (2017-18)[1] to administer involuntary

---

[1] All references to the Wisconsin Statutes are to the 2017-

medication. Green appealed the order, and according to our decision in State v. Scott, 2018 WI 74, 382 Wis. 2d 476, 914 N.W.2d 141, the order for involuntary medication was stayed automatically. We review the court of appeals' opinion[2] that reversed the circuit court's[3] decision granting the State's involuntary medication order, lifting the stay of involuntary medication, and tolling the statutory time limit to bring a defendant to competence.

¶2 We conclude that because the State's significant pretrial interests in bringing a defendant who meets each one of the factors set out in Sell v. United States[4] to competency for trial and providing timely justice to victims outweigh upholding a defendant's liberty interest in refusing involuntary medication at the pretrial stage of criminal proceedings, Scott's automatic stay of involuntary medication orders pending appeal does not apply to pretrial proceedings. Therefore, we employ our supervisory authority to limit our decision in Scott on which the court of appeals relied.[5]

---

2018 version unless otherwise indicated.

[2] State v. Green, 2021 WI App 18, 396 Wis. 2d 658, 957 N.W.2d 583.

[3] The Honorable Valerie Bailey-Rihn of Dane County Circuit Court presided.

[4] Sell v. United States, 539 U.S. 166, 179 (2003).

[5] The court of appeals concluded that the State did not meet its burden in regard to the second and fourth Sell factors that we adopted and required in State v. Fitzgerald, 2019 WI 69, ¶2, 387 Wis. 2d 384, 929 N.W.2d 165, unless dangerousness to self or others

2

¶3 We also conclude that Wis. Stat. § 971.14(5)(a)1. is not subject to tolling in a pretrial context. Accordingly, we affirm the court of appeals decision in part.

## I. BACKGROUND

¶4 The facts in this case are undisputed. On December 27, 2019, the State filed a criminal complaint charging Green with first-degree intentional homicide with use of a dangerous weapon. Pretrial, defense counsel raised reason to doubt Green's competency to proceed. The circuit court ordered a competency examination, which was completed by Dr. Craig Schoenecker and filed with the court. At the competency hearing, Dr. Schoenecker testified that Green was not competent but could be restored to competency through anti-psychotic-type medication within the 12-month statutory timeframe. Dr. Schoenecker also testified that the medication was medically appropriate, substantially unlikely to have side effects that would undermine a fair trial, and that other, less intrusive, treatments were unlikely to restore Green to competency.

¶5 After the hearing, the circuit court found Green incompetent. Accordingly, the court entered an order of commitment for treatment with the involuntary administration of medication.

_____

is at issue.

Because Green received alternate treatment; pled guilty to a lesser charge; was found not guilty by reason of mental disease or defect and is receiving care appropriate to his condition, these concerns are no longer relevant to this review. No party raised mootness in their briefs to us, therefore, we do not address the mootness doctrine.

Following this determination, Green appealed and filed an emergency motion for stay of the involuntary medication order pending appeal, which was automatically granted by the circuit court pursuant to our decision in Scott.

¶6 The State responded with motions to lift the automatic stay and to toll the statutory time period to bring a defendant to competence, both of which were granted by the circuit court. Green appealed. He moved for relief pending appeal, which included reinstatement of the temporary stay. The court of appeals reversed the circuit court's involuntary medication order and its order lifting the automatic stay of involuntary medication. State v. Green, 2021 WI App 18, ¶2, 396 Wis. 2d 658, 957 N.W.2d 583. In addition, the court of appeals determined that the circuit court lacked authority to toll the statutory time period to bring Green to competency. Id., ¶58. We granted the State's petition for review.

¶7 Upon granting review, the parties submitted briefs addressing the circuit court's ability to toll the limits on the maximum length of commitment for competency restoration. However, following oral argument, additional briefing was ordered to answer whether the automatic stay required by Scott applied to pretrial proceedings. We determine: (1) whether Scott's automatic stay applies to pretrial competency proceedings and (2) whether Wis. Stat. § 971.14(5)(a)1. permits tolling the 12-month limitation provided to restore a defendant to competency.

4

## II.   DISCUSSION

### A.   Standard of Review

¶8   In the matter before us, we review the exercise of our superintending and administrative authority over Wisconsin courts as reasoned in Scott.  Scott, 382 Wis. 2d 476, ¶43.  In so doing, we review our discretionary exercise of a constitutionally granted power.  Wis. Const. art. VII, § 3.  This review involves not just the declared source of that power, but also the rationale we employed for exercising it.

¶9   We also review the court of appeals' interpretation and application of Wis. Stat. § 971.14(5)(a)1.  Statutory interpretation and application present questions of law for our independent review.  Wisconsin Legislature v. Palm, 2020 WI 42, ¶14, 391 Wis. 2d 497, 942 N.W.2d 900.

### B.   Competency Proceedings

¶10  This case arises out of an order of commitment for the provision of involuntary medication.  Therefore, some background about the statutory foundation for and the judicial interpretations of such orders may be helpful to the reader.

¶11  We begin with the statutory foundation for commitment proceedings in criminal prosecutions, Wis. Stat. § 971.13(1), which provides:

> No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.

5

§ 971.13(1). Section 971.13(1) is a codification of the due process requirement that a defendant be able to "understand" and "assist" when evaluating a defendant's competency to stand trial. It "considers whether the defendant: (1) 'has sufficient present ability to consult' with his or her lawyer 'with a reasonable degree of rational understanding;' and (2) 'has a rational as well as factual understanding of the proceedings.'" State v. Smith, 2016 WI 23, ¶35, 367 Wis. 2d 483, 878 N.W.2d 135 (quoting State v. Byrge, 2000 WI 101, ¶27, 237 Wis. 2d 197, 614 N.W.2d 477). "This two-part 'understand-and-assist' test constitutes the core of the competency-to-stand-trial analysis." Id., ¶28.

¶12 Furthermore, "[w]henever there is a reason to doubt the competency of a defendant to proceed," the circuit court is directed to order an examination of the defendant under Wis. Stat. § 971.14(1r)(a) and (2). State v. Garfoot, 207 Wis. 2d 214, 221, 558 N.W.2d 626 (1997). Upon completion of the examination, the examiner submits a report "'regarding the defendant's present mental capacity to understand the proceedings and assist in his or her defense.'" Id. (quoting § 971.14(3)(c)). Importantly, the inquiry whether a defendant is competent to stand trial is a judicial, not a medical, determination. Byrge, 237 Wis. 2d 197, ¶31. "Although a defendant may have a history of psychiatric illness, a medical condition does not necessarily render the defendant incompetent to stand trial." Id. (quoting State ex rel. Haskins v. Cnty. Ct. of Dodge Cnty., 62 Wis. 2d 250, 264-65, 214 N.W.2d 575 (1974)).

6

¶13  When a defendant's competency is contested, the court shall hold an evidentiary hearing.   Wis. Stat. § 971.14(4)(b). The circuit court should not make a competency determination simply "on the basis of rubber stamping the report of a psychiatrist." Haskins, 62 Wis. 2d at 264.  Rather, the circuit court must "weigh evidence that the defendant is competent against evidence that he or she is not."  Garfoot, 207 Wis. 2d at 222.

¶14  If a defendant is found to be incompetent, a court may allow the government to confine and involuntarily medicate the defendant if certain criteria are met.  In Sell v. United States, the United States Supreme Court reasoned that:

> [T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.

Sell v. United States, 539 U.S. 166, 179 (2003); see also Riggins v. Nevada, 504 U.S. 127, 139 (1992) (citing Washington v. Harper, 494 U.S. 210 (1990)).  Although permitted, the Supreme Court in Sell explained that administration of drugs solely to return competence may be rare.  Sell, 539 U.S. at 180.

¶15  The Supreme Court set out four factors, often referred to as the "Sell factors," as the standard for determining whether involuntary medication is constitutionally permissible.[6]  First,

_____

[6] Two years ago, in Fitzgerald, we adopted the Sell factors and concluded that ordering involuntary medication without first

7

"a court must find that <u>important</u> governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property." <u>Id.</u> at 180 (emphasis in original). Second, the court must conclude that "involuntary medication will <u>significantly further</u> those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial." <u>Id.</u> at 181 (emphasis in original). Yet, "[a]t the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." <u>Id.</u>

¶16 Third, "the court must conclude that involuntary medication is <u>necessary</u> to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." <u>Id.</u> (emphasis in original). And finally, fourth, "the court must conclude that administration of the drugs is <u>medically appropriate</u>, <u>i.e.</u>, in the patient's best medical interest in light of his medical condition." <u>Id.</u> (emphasis in original).

---

complying with the <u>Sell</u> factors was unconstitutional. <u>See</u> <u>Fitzgerald</u>, 387 Wis. 2d 384, ¶32 (holding that Wis. Stat. § 971.14(3)(dm) and (4)(b) are unconstitutional unless the circuit court applies the <u>Sell</u> factors).

8

¶17 These factors encapsulate competing policy and constitutional considerations at play when a court analyzes whether the government shall be permitted to involuntarily medicate a defendant in order to bring the defendant to competency to stand trial. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "individuals have 'a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs.'" State v. Fitzgerald, 2019 WI 69, ¶13, 387 Wis. 2d 384, 929 N.W.2d 165 (quoting Harper, 494 U.S. at 221). Alternately, the State has an important interest in bringing an individual accused of a serious crime to trial. Sell, 539 U.S. at 179. It was against the interplay of these important, competing interests that we decided State v. Scott.

### C. State v. Scott

#### 1. Postconviction

¶18 Several years after being convicted, Andre Scott sought to pursue postconviction relief. Scott, 382 Wis. 2d 476, ¶5. Defense counsel requested a competency evaluation, and the circuit court held a competency hearing. Thereafter, the court ordered that the defendant be involuntarily medicated to competency for purposes of participating in postconviction proceedings. Id., ¶6. We reviewed the circuit court's order for involuntary medication to enable participation in postconviction proceedings. The circuit court had found that Scott was not competent to proceed with his postconviction motion for relief and was not competent to refuse medication and treatment. Id.

9

¶19 We granted bypass and reversed the circuit court's involuntary medication order because it had not followed the procedures we set forth in State v. Debra A.E.[7] Scott, 382 Wis. 2d 476, ¶8. Although the circuit court's decision in Scott was reversed based on its failure to follow those procedures, we posed and answered an additional question: "Should involuntary medication or treatment orders be automatically stayed pending appeal?" Id., ¶10.

¶20 In invoking our constitutional superintending authority, we concluded that "involuntary medication orders are subject to an automatic stay pending appeal." Id., ¶43. Our reasoning for the decision was simple, "if involuntary medication orders are not automatically stayed pending appeal, the defendant's 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs' is rendered a nullity." Id., ¶44 (quoting Sell, 539 U.S. at 177).

¶21 Furthermore, in order to give the State the opportunity to lift the stay, we modified the legal standard set forth in State v. Gudenschwager, 191 Wis. 2d 431, 529 N.W.2d 225 (1995). Scott, 382 Wis. 2d 476, ¶45. On a motion to lift an automatic stay pending appeal of an involuntary medication order, we concluded that the State:

    (1)   make a strong showing that it is likely to succeed on the merits of the appeal;

    (2)   show that the defendant will not suffer irreparable harm if the stay is lifted;

---

[7] State v. Debra A.E., 188 Wis. 2d 111, 523 N.W.2d 727 (1994).

10

> (3)    show that no substantial harm will come to other
>         interested parties if the stay is lifted; and
>
> (4)    show that lifting the stay will do no harm to the
>         public interest.

Id., ¶47.  This presents a discretionary decision for the court of appeals; therefore, we concluded that the court of appeals was required to explain the reasoning underlying its decision.  Id., ¶48.

¶22  In the years following our decision in Scott, experiences with its employment at differing points in criminal proceedings require that we revisit our exercise of discretion in regard to automatically staying involuntary medication orders during an appeal of such orders.  In our further discussion, we examine whether our reasoning that supported Scott's automatic stay pending appeal applies to appeals of involuntary medication orders issued in a pretrial context.

¶23  We begin with Debra A.E. where we set out procedures for managing postconviction relief of allegedly incompetent defendants.[8]  The process established by Debra A.E. requires:

> [D]efense counsel should proceed with postconviction
> relief on a defendant's behalf, even if the defendant
> is incompetent, when issues rest on the trial court
> record and involve no risk to the defendant.[9]

---

[8] In Debra A.E., we concluded that Wis. Stat. § 971.14(1)(a) (1991-92) did not apply to post-sentencing proceedings.  Debra A.E., 188 Wis. 2d at 128 n.14.  We note that § 971.14(1)(a) has been repealed and replaced with § 971.14(1r).  The parties do not challenge whether competency determinations apply to postconviction proceedings.  Accordingly, we do not address the statutory change further.

[9] Id. at 130.

11

> [A]fter sentencing, if state or defense counsel has a good faith doubt about a defendant's competency to seek postconviction relief, counsel should advise the appropriate court of this doubt on the record and move for a ruling on competency.[10]

> Based on the tasks that may be required of defendants seeking postconviction relief, we conclude that a defendant is incompetent to pursue postconviction relief under sec 809.30 . . . when he or she is unable to assist counsel or to make decisions committed by law to the defendant with a reasonable degree of understanding.[11]

> [If the defendant's assistance is needed for decision-making,] defense counsel can seek appointment of a temporary guardian when an incompetent defendant is incapable of making a decision that the law requires the defendant to make.[12]

In Scott, we endorsed those procedures set out in Debra A.E. Scott, 382 Wis. 2d 476, ¶25.

¶24 We explained that our purpose in creating those procedures was to "fashion a process through which circuit courts and counsel can manage the postconviction relief of alleged incompetent defendants" while effectively administering the judicial system. State v. Debra A.E., 188 Wis. 2d 111, 129, 523 N.W.2d 727 (1994). Further, because many postconviction defendant-opportunities can be proceeded upon independently by counsel, we concluded that postconviction proceedings do not ordinarily need to "include a court order for treatment to restore

---

[10] Id. at 131.

[11] Id. at 126.

[12] Id. at 130.

12

competency.  Meaningful postconviction relief can be provided even though a defendant is incompetent."  Id. at 130.

¶25  When taken together, Debra A.E.'s procedures, affirmed in Scott, show that competence has a different effect on a defendant's interests at the postconviction stage of criminal proceedings than competence has pretrial.  Postconviction, a defendant's liberty interest in refusing involuntary medication remains high.  Scott, 382 Wis. 2d 476, ¶44.  However, the State's interest in involuntarily medicating a defendant is significantly less at the postconviction stage when compared to pretrial.  This is so, in part, because, although victim and community interests remain considerable at the postconviction stage, the State has already employed a significant portion of the criminal justice process to try to achieve justice for victims and the community as a whole.  Furthermore, the State's dual interest in protecting a defendant's right to appeal and promoting the finality of the conviction can be accomplished despite an incompetent defendant. Id.

## 2. Pretrial

¶26 Pretrial, the effects of a defendant's lack of competence are quite different. Under our common law system, it has long been accepted that "[u]nless a defendant is competent, the State cannot put him on trial." Riggins, 504 U.S. at 139 (Kennedy, J., concurring); see also State v. Johnson, 133 Wis. 2d 207, 223, 395 N.W.2d 176, 184 (1986) ("We start with the proposition that an incompetent [defendant] may not be subjected to a trial.").

¶27 The prohibition against "trying the incompetent defendant was well established by the time Hale and Blackstone wrote their famous commentaries." Cooper v. Oklahoma, 517 U.S. 348, 356 (1996) (quoting 4 W. Blackstone, Commentaries *24 ("If a man in his sound memory commits a capital offence . . . and if, after he has pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defence?")). In short, the requirement that the defendant be competent to stand trial is "rudimentary," Riggins, 504 U.S. at 139 (Kennedy, J., concurring), and "fundamental to an adversary system of justice." Drope v. Missouri, 420 U.S. 162, 172 (1975).

¶28 Regarding involuntary medication administered solely to bring a defendant to competency for trial, the United States Supreme Court has held that a defendant "charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is

14

a substantial probability that he will attain that capacity in the foreseeable future." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

¶29 In Sell, the Supreme Court set forth criteria for determining when the government may be allowed to involuntarily medicate a defendant for the purpose of making the defendant competent to stand trial. Sell, 539 U.S. at 180-81. In short summation, a court must find that: (1) there are important government interests at stake, including bringing a defendant to trial for a serious crime; (2) involuntary medication will significantly further those state interests; (3) involuntary medication is substantially likely to render the defendant competent to stand trial; and (4) administration of the drugs is in the patient's best medical interest in light of his medical condition. Id. However, postconviction circumstances that call for governmental involuntary medication are "rare." Id. at 180.

¶30 As with Debra A.E.'s concerns in a postconviction context, significant, competing interests underlie our consideration of the involuntary administration of medication in a pretrial context. The defendant holds the same substantial liberty interest in refusing involuntary medication, regardless of the stage of proceedings. Scott, 382 Wis. 2d 476, ¶44. Once a defendant is subject to involuntary medication, irreparable harm could be done. Sell, 539 U.S. at 177.

¶31 On the other hand, the State has a significant interest in bringing a defendant to trial. Id. at 180. The State's power "to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace."

15

Illinois v. Allen, 397 U.S. 337, 347 (1970) (Brennan, J., concurring). Further, unlike postconviction proceedings, in pretrial proceedings, the State has yet to employ a significant portion of the criminal justice process to try to achieve justice and uphold the considerable victim and community interests at stake. For example, victims are guaranteed a right to "justice and due process," as well as a "timely disposition of the case, free from unreasonable delay." Wis. Const. art. I, § 9m(2)(d). And while treatment to competency is not always necessary for postconviction proceedings, see Debra A.E., 188 Wis. 2d at 131, the State is required to bring a defendant to competency before a defendant can be tried. Wis. Stat. § 971.13(1).

¶32 Pretrial proceedings fall under the auspice of Wis. Stat. §§ 971.13 and 971.14. The terms of § 971.14(5)(a)1. limit the treatment time for an incompetent defendant to "a period not to exceed 12 months, or the maximum sentence specified for the most serious offense with which the defendant is charged, whichever is less." As soon as a defendant is in custody for treatment, the statutory time during which he or she may be held before trial begins. § 971.14(5)(a)1.; see also Jackson, 406 U.S. at 738 (explaining due process concerns).

¶33 Stated otherwise, while Debra A.E. allows defense counsel to enlarge time periods for continuances in postconviction competency proceedings, Debra A.E., 188 Wis. 2d at 134, statutory and constitutional law principles reject unlimited continuances in pretrial proceedings. If the State is unsuccessful at restoring competency for trial, the likelihood of which is increased if

16

treatment is prevented by the automatic stay of Scott, a defendant must be discharged from commitment and released unless civil commitment proceedings are commenced pursuant to Wis. Stat. ch. 51. See Wis. Stat. § 971.14(6)(a)-(b).

¶34 Since our decision in Scott, the State has been trapped on both ends of the pretrial competency process. On one hand, Wis. Stat. § 971.14(5)(a)1. permits a defendant to be held for 12 months to be brought to competence. On the other hand, Scott's automatic stay of the involuntary medication order keeps the State from starting the treatment that has been ordered by a court. While the State was given some leeway in the form of a modified Gudenschwager test, see Scott, 382 Wis. 2d 476, ¶47, this is a high burden, and when employed, can use up the entire 12-month maximum commitment period that is permitted for treatment. And, if the State is not able to satisfy this Gudenschwager test and the time during which treatment can be required expires, the State is without recourse for prosecution. This is an unexpected consequence of the automatic stay that we created in Scott.

¶35 Accordingly, even though the defendant has a constant liberty interest in refusing involuntary medication, the State cannot prosecute an incompetent defendant. Wis. Stat. § 971.13(1). The State also has a constitutional duty to provide timely justice to crime victims by bringing competent defendants to trial. Wis. Const. art. I, § 9m(2)(d). Those State interests currently are being frustrated by Scott's requirement to impose an automatic stay on treatment during appeals of treatment orders. Accordingly, we conclude that the balance of interests weighs in

17

favor of concluding that Scott's automatic stay of involuntary medication orders does not apply to pretrial proceedings.

¶36 We so conclude because in pretrial proceedings, Scott's automatic stay of involuntary medication orders pending appeal is unsound in principle and unworkable in practice. Johnson Controls, Inc. v. Emps. Ins. of Wausau, 2003 WI 108, ¶99, 264 Wis. 2d 60, 665 N.W.2d 257 (citing Allied-Signal, Inc. v. Dir., Div. of Tax'n, 504 U.S. 768, 783 (1992)). Accordingly, we conclude that the automatic stay created in Scott shall not be applied during pretrial proceedings.[13]

### D. Wisconsin Stat. § 971.14(5)(a)1.

¶37 By its terms, Wis. Stat. § 971.14(5)(a)1. limits commitment to restore competency to "a period not to exceed 12 months, or the maximum sentence specified for the most serious offense with which the defendant is charged, whichever is less." The State requested tolling of the statutory 12-month limitation for achieving competency based on the stay of Green's medication order under Scott.

¶38 In answering the question of whether Wis. Stat. § 971.14(5)(a)1. permits tolling, we begin with the plain words of the statute to determine what the legislature meant by the words it chose. Townsend v. ChartSwap, LLC, 2021 WI 86, ¶12, 399 Wis. 2d 599, 967 N.W.2d 21 (citing State ex rel. Kalal v. Cir. Ct. for

---

[13] Going forward, in pretrial proceedings, a defendant seeking to stay an involuntary medication order pending appeal is able to apply for a stay and the court of appeals, in the exercise of its discretion, shall explain its rationale for granting or denying the defendant's motion after considering our rationale herein.

18

Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). If the meaning is plain and unambiguous, our inquiry usually ends without consulting extrinsic sources of interpretation, such as legislative history. Townsend, 399 Wis. 2d 599, ¶12. In addition to the words that the legislature chose, context and the structure of the statute are important to a plain meaning interpretation. Id., ¶13.

¶39 The words of Wis. Stat. § 971.14(5)(a)1. say nothing about tolling, one way or the other. This is not unusual. However, there have been times when tolling was accorded based on the manner in which two relevant statutes fit together. Donaldson v. West Bend Mut. Ins. Co., 2009 WI App. 134, ¶13, 321 Wis. 2d 244, 773 N.W.2d 470 (explaining how the period during which a cause of action may be used as a counterclaim is tolled by the date on which plaintiff files the action). The State referenced no such statutory linkage in this matter.

¶40 Statutory tolling as a court remedy also has been equitably based on promised action that harms a party who reasonably relied on the promise and is injured when the promised act does not occur. State ex rel. Griffin v. Smith, 2004 WI 36, ¶3, 270 Wis. 2d 235, 677 N.W.2d 259 (describing counsel's promise to act as Griffin requested, we equitably tolled the time for filing certiorari review of his parole revocation). No such promised action is present here.

¶41 However, while the words of Wis. Stat. § 971.14(5)(a)1. do not say anything about tolling, they do contextually inform our analysis. See Townsend, 399 Wis. 2d 599, ¶13. Section

19

971.14(5)(a)1. provides that if the court determines that a defendant is not competent but is likely to become competent within the statutory timeframe, "[it] shall suspend the proceedings and commit the defendant to the custody of the department for treatment for a period not to exceed 12 months . . . ." § 971.14(5)(a)1. As the court of appeals noted, the legislature describes § 971.14(5)(a)1.'s 12-month time period in terms of commitment rather than treatment. See Green, 396 Wis. 2d 658, ¶61 ("Although the custody under § 971.14 must be for purposes of treatment, it is the custody, not the treatment, that may not exceed twelve months.").

¶42 In examining Wis. Stat. § 971.14's other subsections, the same 12-month time period is repeatedly described as the "commitment period." See § 971.14(5)(b) ("Each report shall indicate either that the defendant has become competent, that the defendant remains incompetent but that attainment of competency is likely within the remaining commitment period, or that the defendant has not made such progress that attainment of competency is likely within the remaining commitment period."); § 971.14 (6)(a) ("If the court determines that it is unlikely that the defendant will become competent within the remaining commitment period, it shall discharge the defendant from the commitment and release him or her, except as provided in par. (b).").

¶43 The legislature's use of a firm 12-month period as a "commitment" period, rather than employing a more flexible "treatment" period as the term during which competency could be restored, supports the conclusion that the legislature set a firm

20

limit on the term of an involuntary commitment to restore competency for trial.

¶44 Furthermore, the statutory history underlying other amendments to Wis. Stat. § 971.14(5)(a) confirms this interpretation through the legislature's repeated attention to due process concerns as instructed by us and by the United States Supreme Court. See County of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581) ("'A review of statutory history is part of a plain meaning analysis' because it is part of the context in which we interpret statutory terms.").

¶45 Early provisions of Wis. Stat. § 971.14(5) had no definite time limit during which a defendant could be committed when competency was sought for trial. The commitment could proceed "for so long as such condition endures." Wis. Stat. ch. 191, § 4700 (1878). In 1969, the legislature amended § 971.14(5) to provide that persons committed as incompetent to stand trial should be confined for treatment for competency no longer than they could be confined if convicted of the crime charged.

¶46 Then in 1975 in response to our decision in Haskins, the legislature repealed the Wis. Stat. § 971.14(5) requirement that a defendant could not be committed for longer than the defendant could have been confined if convicted. A legislative note to Assembly Bill 257, which was enacted as ch. 153, Laws of 1975,

21

explained that "[t]he changes in sub. (5), relating to length of commitment to determine competency, are a result of Haskins."[14]

¶47 In State ex rel. Deisinger v. Treffert, 85 Wis. 2d 257, 270 N.W.2d 402 (1978), we judicially replaced the time limit on confinements to achieve competency that the legislature had removed based on its misunderstanding of our Haskins decision. We concluded that "[t]he most basic notions of due process fairness require that one found incompetent to stand trial is entitled to release when observatory confinement reaches the length of the potential maximum sentence for the underlying criminal offense." Id. at 268. Shortly after Deisinger, the legislature once again responded by amending Wis. Stat. § 971.14(5)(a) to legislatively require the limitation we set out judicially in Deisinger. Ch. 367, Laws of 1981.

¶48 In 1979, the legislature required that a defendant who was committed to be treated to competence be examined at "6-month intervals following commitment[, and] if the defendant has not regained competency within 24 months of commitment" the defendant should be discharged from commitment with a ch. 51 commitment remaining a possibility. In 1981, the legislature again amended Wis. Stat. § 971.14(5)(a) to provide that the period during which treatment would be accorded was "18 months, or the maximum sentence . . . whichever is less." § 971.14(5)(a) (1981-82).

---

[14] This legislative history confirms our understanding derived from the statutory history, which is explained further below, that the legislature's changes were responsive to its understanding of our directives. Westmas v. Creekside Tree Serv., Inc., 2018 WI 12, ¶20, 379 Wis. 2d 471, 907 N.W.2d 68.

¶49 Then in 1989 Wis. Act 31, § 2850, effective January 1, 1990, the legislature once again amended Wis. Stat. § 971.14(5)(a) to reduce the maximum confinement time for treatment to competence from 18 months to 12 months. That was the last substantive change.

¶50 Those statutory revisions do not decide whether the 12-month provision found in Wis. Stat. § 971.14(5)(a)1. to bring a defendant to competence should be tolled in the case before us, but they show that the legislature was coordinating its revisions with due process concerns that we raised and that the United States Supreme Court raised in Jackson. State v. Moore, 167 Wis. 2d 491, 500, 481 N.W.2d 633 (1992). As the United States Supreme Court has carefully explained, "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [trial competency] in the foreseeable future." Jackson, 406 U.S. at 738.[15]

¶51 In the matter before us, the legislature has decided that 12 months is the maximum time during which to "determine whether there is a substantial probability that [a defendant] will attain competency in the foreseeable future." Id. at 716. Jackson limited such confinement based on due process concerns. Given the past due process consideration that the legislature has afforded

---

[15] The presumption of innocence is overturned at conviction and therefore, it is not a consideration postconviction. State v. Allen, 2010 WI 89, ¶17, 328 Wis. 2d 1, 786 N.W.2d 124 ("Upon appeal, however, the defendant is no longer protected by the presumption of innocence.").

23

in its amendments to Wis. Stat. § 971.14(5)(a)1., we conclude that the plain meaning of the 12-month treatment limit does not permit tolling of its limit on confinement for pretrial treatment to achieve competency. Accordingly, we affirm the court of appeals decision in that regard.

### III. CONCLUSION

¶52 We conclude that because the State's significant pretrial interests in bringing a defendant who meets each one of the factors set out in Sell v. United States to competency for trial and providing timely justice to victims outweigh upholding a defendant's liberty interest in refusing involuntary medication at the pretrial stage of criminal proceedings, Scott's automatic stay of involuntary medication orders pending appeal does not apply to pretrial proceedings. Therefore, we employ our supervisory authority to so limit our decision in Scott on which the court of appeals relied.

¶53 We also conclude that Wis. Stat. § 971.14(5)(a)1. is not subject to tolling in a pretrial context. Accordingly, we affirm the court of appeals decision in part.

*By the Court.*—The decision of the court of appeals is limited in part and affirmed in part.

24

¶54 ANN WALSH BRADLEY, J. *(concurring in part, dissenting in part).* The involuntary administration of antipsychotic drugs is "no small matter." Langlade County v. D.J.W., 2020 WI 41, ¶43 n.7, 391 Wis. 2d 231, 942 N.W.2d 277. Such drugs are "powerful enough to immobilize mind and body," have a "profound effect . . . on the thought processes of an individual," and come with a "well-established likelihood of severe and irreversible adverse side effects." In re Guardianship of Roe, 421 N.E.2d 40, 53 (Mass. 1981); see also United States v. Watson, 793 F.3d 416, 419 (4th Cir. 2015).

¶55 Accordingly, both this court and the United States Supreme Court have recognized that individuals have a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs. State v. Fitzgerald, 2019 WI 69, ¶13, 387 Wis. 2d 384, 929 N.W.2d 165 (citing Washington v. Harper, 494 U.S. 210, 221 (1990)).

¶56 Just four years ago in State v. Scott, 2018 WI 74, ¶43, 382 Wis. 2d 476, 914 N.W.2d 141, this court unanimously again affirmed the need to protect that liberty interest. We established a new rule affecting criminal defendants declared not competent: "involuntary medication orders are subject to an automatic stay pending appeal." Id.

¶57 Our rationale for that rule was likewise unanimous and succinctly stated: "The reasoning for our decision is simple——if involuntary medication orders are not automatically stayed pending appeal, the defendant's 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of

1

antipsychotic drugs' is rendered a nullity." Id., ¶44 (citations omitted).

¶58 Despite no party initially raising the issue,[1] the majority now backtracks on this rule, declaring that our determination in Scott does not apply to pre-trial proceedings. In doing so, it accomplishes just the result that Scott was intended to prevent, i.e., that the defendant's liberty interest in avoiding unwanted antipsychotic medication is rendered a nullity.

¶59 I agree with the majority that Wis. Stat. § 971.14(5)(a)1. is not subject to tolling.[2] However, I part ways with the majority because I determine that the reasoning behind the automatic stay in Scott applies equally to pre-trial proceedings and postconviction proceedings. Rather than limit Scott, I would uphold it along with the vitality of the constitutionally protected right on which it is premised.

¶60 Accordingly, I concur in part and dissent in part.

I

¶61 Joseph Green was charged with first-degree intentional homicide, and his counsel raised concerns regarding his competency to proceed. Majority op., ¶4. After a hearing, the circuit court found Green not competent, but that competency could be restored

---

[1] In neither the State's initial brief nor its reply brief did it argue to limit Scott in the way the majority now accomplishes. The issue of whether Scott should be limited was first raised by the court at oral argument, after which we ordered supplemental briefing.

[2] Accordingly, I join part II.D of the majority opinion.

2

with medication. Id., ¶5. It thus entered an involuntary medication order. Id. Green appealed and sought a stay of the involuntary medication order pending appeal, which the circuit court granted pursuant to Scott. Id.

¶62 The State moved to lift the automatic stay and to toll the statutory time period to bring Green to competency. Id., ¶6. Both motions were granted by the circuit court and Green appealed. Id. As relevant here, the court of appeals reversed the circuit court's tolling order, determining that the circuit court lacked authority to toll the statutory time period to bring Green to competency. State v. Green, 2021 WI App 18, ¶2, 396 Wis. 2d 658, 957 N.W.2d 583.

¶63 After the State petitioned for review, the majority now affirms the court of appeals' conclusion on tolling, determining that "Wis. Stat. § 971.14(5)(a)1. is not subject to tolling in a pretrial context." Majority op., ¶3. However, after ordering supplemental briefing on the issue, the majority also concludes that Scott's automatic stay "does not apply to pretrial proceedings." Id., ¶2. It reaches this result because, in its view:

> [T]he State's significant pretrial interests in bringing a defendant who meets each one of the factors set out in Sell v. United States to competency for trial and providing timely justice to victims outweigh upholding a defendant's liberty interest in refusing involuntary medication at the pretrial stage of criminal proceedings . . . .

Majority op., ¶2 (footnote omitted).

3

II

¶64 Adherence to the well-established liberty interest in avoiding the unwanted administration of antipsychotic drugs compelled our decision in Scott. Among the several issues we decided was "whether involuntary medication orders should be stayed automatically pending appeal as suggested by Scott." Scott, 382 Wis. 2d 476, ¶42.

¶65 Answering this question in the affirmative, we unanimously employed our superintending authority to "order that involuntary medication orders are subject to an automatic stay pending appeal." Id., ¶43. Explaining our rationale, we stated: "The reasoning for our decision is simple——if involuntary medication orders are not automatically stayed pending appeal, the defendant's 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs' is rendered a nullity." Id., ¶44 (citations omitted).

¶66 Nothing about this holding in Scott indicated that it was limited to postconviction proceedings. If we had wanted to so limit it, we certainly could have, as we explicitly did with regard to another of the issues we addressed in Scott. Namely, in addition to the question of an automatic stay, another question presented in Scott was as follows: "May a circuit court require a non-dangerous but incompetent defendant to be involuntarily treated to competency in the context of postconviction proceedings . . . ?" Scott, 382 Wis. 2d 476, ¶10 (emphasis added). We answered this question with specific reference to

4

postconviction proceedings only: "Before a circuit court can require a non-dangerous but incompetent defendant to be involuntarily treated to competency in the context of postconviction proceedings, the circuit court must follow the procedure this court established in State v. Debra A.E., 188 Wis. 2d 111, 523 N.W.2d 727 (1994)." Scott, 382 Wis. 2d 476, ¶11 (emphasis added).

¶67 In contrast, our holding with regard to the automatic stay contained no such caveat. Indeed, Scott includes not even a hint that such a limitation was desirable or necessary.[3]

¶68 More importantly, the reasoning behind the automatic stay in Scott applies equally to pre-trial proceedings and postconviction proceedings. Again, the Scott court stated that its rationale "is simple——if involuntary medication orders are not automatically stayed pending appeal, the defendant's 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs' is rendered a nullity." Id., ¶44 (citations omitted).

---

[3] The majority fosters confusion in its analysis with its statement that in pre-trial proceedings "Scott's automatic stay of involuntary medication orders pending appeal is unsound in principle and unworkable in practice" and its accompanying citation to Johnson Controls, Inc. v. Employers Insurance of Wausau, 2003 WI 108, ¶99, 264 Wis. 2d 60, 665 N.W.2d 257. Majority op., ¶36. Johnson Controls presents the framework for when this court should depart from stare decisis by overruling past precedents. See Johnson Controls, Inc., 264 Wis. 2d 60, ¶¶94-100. I question whether this analysis has any application to the present case——the majority does not overrule Scott nor does any party advocate for such a result.

5

¶69 I acknowledge that the State's interests in bringing a defendant to competency may vary based on the procedural posture of a case. But the defendant's liberty interest in avoiding unwanted medication is a constant. As Green argues, such an interest "would be rendered just as much a nullity without an automatic stay pre-trial as it would postconviction." In either situation, when the defendant is forcibly medicated, the damage is done. See United States v. Williams, 356 F.3d 1045, 1055 (9th Cir. 2004) (referring to an "order compelling a person to take antipsychotic medication" as "an especially grave infringement of liberty").

¶70 While removing the automatic stay pre-trial has a drastic effect on the interests of the defendant, leaving it in place would have little effect on those of the State. Indeed, under Scott the State retains the ability to move to lift the stay, which it can do in short order. Scott, 382 Wis. 2d 476, ¶45.

¶71 The majority correctly identifies the State's interest in bringing a defendant to trial and achieving timely justice on behalf of the victims. Majority op., ¶¶31, 35. These are of course strong interests. However, in the name of these interests the majority tramples a defendant's constitutional rights rooted in bodily autonomy.

¶72 Once a defendant is forcibly medicated, it is impossible to undo such an intrusion. We should be mindful to avoid ringing a bell that cannot be unrung, especially where there exists a process to lift the stay in the case where the State's interests are as weighty as the majority claims.

6

¶73  For the foregoing reasons, I respectfully concur in part and dissent in part.

¶74  I am authorized to state that Justices REBECCA FRANK DALLET and JILL J. KAROFSKY join this separate writing.