**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 7, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1402**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017ME72

**IN COURT OF APPEALS
DISTRICT I**

IN THE MATTER OF THE MENTAL COMMITMENT OF D. H.

MILWAUKEE COUNTY,

      PETITIONER-RESPONDENT,

  V.

D. H.,

      RESPONDENT-APPELLANT.

       APPEAL from an order of the circuit court for Milwaukee County: LINDSEY CANONIE GRADY, Judge. *Reversed and cause remanded with directions.*

¶1    WHITE, J.[1] Dan appeals from the circuit court order granting Milwaukee County's request for involuntary medication and treatment.[2] Dan argues that the County failed to satisfy its burden to prove that the County's medical expert witness had given the patient a reasonable explanation of the advantages and disadvantages, side effects, and alternatives to the prescribed involuntary medications and treatment. Upon review, we conclude that the County failed to satisfy its burden; therefore, the circuit court's order was erroneously granted. Accordingly, we reverse the order and remand with directions to vacate the medication order.[3]

## BACKGROUND

¶2    This case arises out of the latest extension of Dan's involuntary medication and treatment order in December 2021. The County's petitions for commitment and involuntary medication had been granted by the circuit court in 2017, 2018, 2019, and 2020.[4] In 2017, the circuit court found Dan incompetent to proceed to trial on a second-degree sexual assault charge in April 2016. Dan had been admitted to Mendota Mental Health Institute, where he is still housed, for

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to D.H. by a pseudonym. *See* WIS. STAT. RULE 809.86.

[3] During the pendency of these proceedings, we granted the County's request for an extension of time to respond to Dan's appeal. As a result, the medication order appears to have expired. The issue of mootness has not been raised by the parties and we do not address it.

[4] The Honorable Lindsey Canonie Grady granted the order for involuntary medication and treatment in 2021. Multiple judges have ruled on various decisions regarding Dan's treatment since 2016; we refer to all of them generally as the circuit court unless noted.

treatment of his competency to proceed to trial, pursuant to WIS. STAT. § 971.14(5). However, Dan's case was converted to a civil commitment proceeding pursuant to § 971.14(6) on the basis that Dan was incompetent to stand trial and was unlikely to become competent within the remaining commitment period under ch. 971.

¶3 On December 3, 2021, the trial court heard the County's petition to extend Dan's civil commitment for an additional twelve months.[5] In the signed court order, the trial court found that Dan was mentally ill, dangerous due to "a substantial probability of physical harm to other individuals," and that based on Dan's treatment record, there was a substantial likelihood that that Dan would be a proper subject for commitment if treatment were withdrawn.

¶4 Approximately two weeks later, the circuit court addressed the County's petition for involuntary medication and treatment. The record reflects that in the December 17, 2021 hearing, Dr. Odette Anderson testified about Dan's "schizoaffective disorder," which was exhibited by "irritable mood, agitated mood at times, grandiosity in his thinking, expansive mood at times. Mood lability, meaning that he will switch from feeling agitated and angry to sad, depressed to on top of the world, unstoppable, euphoric."

¶5 Dr. Anderson then testified about the Dan's treatment plan including prescribed medications:

---

[5] The Honorable Paul R. Van Grunsven presided over the 2021 commitment extension hearing and issued that order; however, Dan's case was moved to Judge Lindsey Canonie Grady between the commitment and involuntary medication hearings. We refer to Judge Van Grunsven as the trial court.

> He takes Risperidone, which is an anti-psychotic medication aimed at the psychotic piece of the illness. He takes Sertraline to decrease his tendency towards sexually inappropriate behaviors. He takes valproic acid, which helps specifically with mood stabilization. He takes Lorazepam to address anxiety and also to augment the effects of the anti-psychotic Risperidone.
>
> He takes Escitalopram to help with some of the anxieties, specifically aimed at his frequent thoughts and distress about wanting to leave Mendota Mental Health Institute but not being able to do so. And finally he takes Benztropine, which is a medication aimed at prophylaxis or prevention of side effects, for which [Dan] has a high risk of developing given that he is taking Risperidone.

The County asked if the medication each had an "an injectable alternative," to which Dr. Anderson replied that "[n]ot each of them in terms of an exact alternative of the medicine," but she employed Haloperidol as a substitute.

¶6 Dr. Anderson testified that prior to submitting the petition for medication, she spoke with Dan about the medication prescribed, the benefits, risks, and alternative psychotropic medications. The doctor stated she told Dan about the medications in two parts:

> One we talked about is the benefits in terms of the biological effects of the drugs and how they will affect the symptoms of his schizoaffective disorder that he has. The other approach that we take, we explain this to [Dan], is to speak to goals that he has shared with us, namely that he would like to move to a less restrictive unit and ultimately out of the institute.

For risk and side effects, Dr. Anderson told Dan that "mood side effects can happen"; "weight gain … can happen with Risperidone as well as with valproic acid"; and "sedation that can take place with these medications as well as the Benztropine and Lorazepam."

¶7     The doctor testified that prior to the expiration of the involuntary medication order, Dan had "intermittent periods of declining medication requiring the intra-muscular back-up injection formulation of the medicine or its alternative." Further, she testified that Dan had six seclusion restraint events over several months; however, when Dan was informed that the involuntary medication order had expired in early December 2021, he "precipitously stopped taking the medication so consistently" and he had two seclusion restraint events in one day. The doctor testified that the only new medications that had been added in the current petition was escitalopram, which had been prescribed two months earlier.[6]

¶8     Dr. Anderson testified that when she attempted to discuss medication with Dan, he would repeatedly state that he takes his medication, but the doctor stated that he did not demonstrate that he understood that taking the medication would provide prolonged stability for him. Dr. Anderson stated that Dan has not complained about side effects, but instead stated that "he's fine, he's not ill, he does not need them." The doctor testified that if Dan would take his prescribed medications on a daily basis there would be a positive therapeutic benefit. Dr. Anderson opined that Dan did not seem to understand that taking his medication might put him in a position to be moved to a less secure unit. The doctor testified that Dan's decision not to cooperate with his medication

---

[6] Later in the proceedings, Dr. Anderson was questioned about Dan's medications and the County attorney began to ask about "escitalopram" and Dr. Anderson replied that it was the generic name for Tylenol. This is factually incorrect. The County offers in appellate briefing that the doctor misheard the drug name and responded to the beginning of the word, suggesting a confusion with acetaminophen, the generic form of Tylenol. We form no opinion about what the doctor believed was stated. However, we note that there is no discussion in the record specifically addressing acetaminophen or Dan's use of that medication.

treatment was not based on informed consent because his current medical conditions affected his ability to do so.

¶9    Dr. Anderson testified that the County requested that the court authorize injectable formulas of some of the medications—specifically Haloperidol injectable in place of Risperidone, valproic acid, and Sertraline. The County also requested the injectable form of Benztropine.[7] Dr. Anderson testified that it was her opinion, held to a reasonable degree of medical certainty, that Dan was not competent to make choices about psychotropic medications on his own behalf.

¶10    Ultimately, the circuit court was "satisfied through the testimony of the doctor that the doctor in fact did explain the advantages, disadvantages, and side effects and gave that information to [Dan]." The court addressed Dan directly:

> My concern is that you are not at this point competent to refuse that medication or treatment and that you are at this point substantially incapable of applying an understanding of the advantages and disadvantages in order to make that informed choice as to whether to accept or refuse medication.
>
> At this point there wasn't clear testimony that you were expressing the understanding of the advantages and disadvantages, and therefore I think it's reasonable for the [c]ourt to find that you were incapable of expressing an understanding of the benefits and the drawbacks of accepting or rejecting treatment.

---

[7] An issue arose that Benztropine was not included on the medication petition; however the circuit court concluded that this was a scrivener's error and that the doctor's testimony showed she complied in-person with the statutory mandate to explain the advantages and disadvantages of this medication with Dan.

The court then made the finding to grant the medication order. The court stated:

> He needs treatment and medication. The advantages and disadvantages and alternatives to that medication have been explained to him. Due to his mental illness, he is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives. He's also substantially incapable of applying an understanding of those. I think it's more to the second. It's not a full second standard, like when we talk about commitments, but I think as far as my findings go, it is the substantial incapacity of applying the understanding.

The circuit court entered the order for involuntary medication and treatment on December 17, 2021. Dan appeals from this order.[8]

## DISCUSSION

¶11    Dan argues that the County failed to offer clear and convincing evidence to support the circuit court's involuntary medication order; therefore, the order should be reversed and vacated. Ultimately, we agree.

¶12    Under the Chapter 51 commitment process, an individual has "the right to exercise informed consent with regard to all medication and treatment unless the committing court … makes a determination, following a hearing, that the individual is not competent to refuse medication or treatment…" WIS. STAT. § 51.61(g)(3). In accord with WIS. STAT. § 51.20(13)(e), the County bears the burden of proving the patient is incompetent to refuse medication by clear and convincing evidence. **Outagamie Cnty. v. Melanie L.**, 2013 WI 67, ¶37, 349

---

[8] Dan's notice of appeal reflected an appeal of both the December 3, 2021 order of commitment and the December 17, 2021 order for involuntary medication and treatment. However, his appeal focuses solely on the order for medication; therefore, we consider the appeal of the extension of his commitment to be abandoned.

Wis. 2d 148, 833 N.W.2d 607. "In evaluating whether the County met its burden of proof, a court must apply facts to the statutory standard" provided in § 51.61(1)(g)4. *Melanie L.*, 349 Wis. 2d 148, ¶39. "[T]he circuit court's findings of fact are reviewed for clear error, but application of those facts to the statute and interpretation of the statute are reviewed independently." *Winnebago Cnty. v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109.

¶13　　In *Melanie L.*, our supreme court reviewed the plain meaning of WIS. STAT. § 51.61(1)(g)4. It concluded that when the circuit court considers a petition for involuntary medication of a mentally ill individual under ch. 51, the first step is to determine whether the petitioning County has presented clear and convincing evidence that the individual was given a reasonable explanation of the advantages and disadvantages of and alternatives to accepting a particular medication or treatment. *Id.*, 349 Wis. 2d 148, ¶67.

> The explanation should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication. The explanation should be timely, and, ideally, it should be periodically repeated and reinforced.

*Id.* As a next step, the petitioning County has two options to proceed to prove whether the individual is either "incapable of understanding" or "substantially incapable of expressing an understanding" of the advantages and disadvantages of accepting or refusing medication. *See* § 51.61(1)(g)4.a.-b. Our supreme court explained that "the court's determination should not turn on the person's choice to refuse to take medication; it should turn on the person's ability to process and apply the information available to the person's own condition before making that choice." *Melanie L.*, 349 Wis. 2d 148, ¶78.

8

¶14 Having considered the proper standard of law, we turn to Dan's arguments.[9] First, he contends that the court failed to establish the correct burden of proof and failed to find that the County overcame the presumption that Dan was competent to make medication decisions. Second, he asserts that the circuit court failed to find that Dr. Anderson gave a "reasonable" explanation of the medications and that the County failed to present clear and convincing evidence that Dr. Anderson gave a reasonable explanation of the disadvantages of the "particular medications" she prescribed or that Dr. Anderson gave any explanation of alternatives to the chosen medications.

¶15 We begin with whether the circuit court applied the wrong burden of proof when it considered the County's petition. Dan asserts that the record is devoid of the circuit court's description of the burden of proof it employed. Our examination of the record support that while the County argued it satisfied the clear and convincing standard, the words were not uttered by the circuit court. The court stated that it had to decide whether Dan "had been informed enough" and whether he was "capable of making a decision that properly evaluates" the proposed medications. We are not persuaded that the circuit court's decision is erroneous as to the burden of proof, but instead the circuit court errs in its findings with regard to the reasonableness of the explanation.

---

[9] As a threshold matter, we reject the County's argument that Dan has waived his challenge when trial counsel made a statement during the involuntary medication hearing about not contesting that Dr. Anderson may or may not have orally explained a medication (Benztropine) but still arguing that the County had failed to provide notice of this medication on the treatment list in the petition. Our examination of the record does not support a concession by Dan's counsel, but an argument differentiating the importance of prior written notice. As Dan responds, the sufficiency of the evidence may always be appealed. *See* WIS. STAT. RULE 809.30(2)(h).

¶16    Turning to the inquiry into whether the doctor's explanation was reasonable, the record reflects significant gaps in the thoroughness of this explanation.    Dr. Anderson's testimony was generalized with regard to her conversations with Dan about the advantages and disadvantages, the alternatives and side effects of those medications, and his understanding of his illness.  It is not clear in the record that Dr. Anderson complied with *Melanie L.*'s guidance to explain to Dan "why a particular drug" was prescribed, the expected advantages and possible side effects of each medication, or the alternative medication options. *Id.*, 349 Wis. 2d 148, ¶67.   We identify three weaknesses that render the explanation unreasonable.

¶17    First, we consider the discussion of Haloperidol to be inadequate. The record reflects that Dr. Anderson did not testify that she explained the advantages and disadvantages of Haloperidol to Dan, despite relying upon Haloperidol as the preferred alternative and injectable option for three other drugs. She did not explain why Dan was prescribed three other medications when one medication could serve as an acceptable alternative to all three.

¶18    Second, Dr. Anderson's testimony about escitalopram was insufficient.   The discussion was brief, referencing that it was a treatment for anxiety.  However, the doctor did testify that Dan had only used the medication for about two months.  As a newer medication, there is no record to support that there has been an ongoing conversation over his multi-year treatment plan to discuss this medication.  Further, she did not discuss why this medication was added into

the medication roster and whether it replaced another medication or responded to a new symptom.[10]

¶19 Third, the doctor's testimony regarding side effects appeared to minimize this issue. Although the doctor testified that she prescribed Benztropine as a probable prophylaxis of side effects and stated that Dan had a high risk of developing side effects because he was also prescribed Risperidone, she failed to discuss what side effects would be prevented. Further, the doctor did not testify about any serious side effects to the medication list, but only mentioned mood, weight gain, and sedation. On appeal Dan references far more serious side effects to Haloperidol, a point noted by this court in *State v. Green*, 2021 WI App 18, ¶23, 396 Wis. 2d 658, 957 N.W.2d 583, *review granted*, 2022 WI 88, *and aff'd in part*, 2022 WI 30, 401 Wis. 2d 542, 973 N.W.2d 770.[11]

¶20 We conclude that the circuit court erred when it concluded that Dr. Anderson's explanation was reasonable and that its findings were clearly

---

[10] The doctor's testimony, through misunderstanding or mishearing, that escitalopram was a generic form of Tylenol did not make the record stronger on the adequacy of the explanation.

[11] An expert medical witness testified that:

> Haldol [also known as Haloperidol] certainly can cause side effects, including sedation, slurred speech, a tremor, a feeling of muscle restlessness that we refer to as akathisia, a phenomenon that is certainly like tremors but referred to as parkinsonism because it mimics the appearance of individuals who have Parkinson's disease. It has the potential to affect cardiac conduction and heart rhythm. It has an impact on what's called the QT interval, which is part of the electrocardiograph rhythm, and it can certainly have some metabolic side effects as well in terms of its impacts on weight gain and blood sugar.

*State v. Green*, 2021 WI App 18, ¶23, 396 Wis. 2d 658, 957 N.W.2d 583, *review granted*, 2022 WI 88, *and aff'd in part*, 2022 WI 30, 401 Wis. 2d 542, 973 N.W.2d 770.

erroneous to reach that conclusion. In *Melanie L.*, our supreme court reversed an involuntary medication order because the record was unclear whether the medical expert was "applying" the statutory standard or "changing" it. *Melanie L.*, 349 Wis. 2d 148, ¶91. That holding made clear the importance of having testimony hew to the statutory standard. In *Christopher S.*, our supreme court affirmed an involuntary medication order in which the doctor's testimony was brief, but mirrored the statutory language. However, we do not read *Christophe S.* to negate a need to provide a careful analysis in the totality of circumstances of the record before the circuit court.[12] The *Christopher S.* court expressly stated that *Melanie L.* was instructive and relied upon its holdings to distinguish Christopher S.'s situation. *Christopher S.*, 366 Wis. 2d 1, ¶51.

---

[12] Our supreme court distinguished *Winnebago Cnty. v. Christopher S.*, 2016 WI 1, ¶54, 366 Wis. 2d 1, 878 N.W.2d 109 from *Outagamie Cnty. v. Melanie L.*, 2013 WI 67, ¶37, 349 Wis. 2d 148, 833 N.W.2d 607, on the basis that the medical expert's testimony mirrored statutory language. The exchange provided was:

> Q. Dr. Keshena, in the course of your treatment of [Christopher] have you had an opportunity to explain to him the advantages, disadvantages, and alternatives to the medication?
>
> A. Yes.
>
> Q. And after you've done that, in your opinion would he be substantially incapable or substantially capable of applying an understanding of the advantages, disadvantages, and alternatives to his own conditions in order to make an informed choice as to whether to accept or refuse psychotropic medication?
>
> A. He's not capable.
>
> Q. So you're saying he's substantially incapable?
>
> A. Yes.

*Christopher S.*, 366 Wis. 2d 1, ¶54. In contrast, in *Melanie L.*, the doctor's testimony focused on whether Melanie L was "capable of applying an understanding of the medication 'to her advantage,'" which left it unclear what standard the doctor applied. *Id.*, 349 Wis. 2d 148, ¶91.

¶21   Although there are similarities in the testimony here with *Christopher S.*, including that the doctor was asked questions that mirror statutory language, there are distinctions that warrant a different outcome.   First, in *Christopher S.*, the medication petition was heard in the same hearing as the recommitment petition.   It was noted in that case that there was "ample evidence that the doctors who treated Christopher S. explained the advantages, disadvantages, and alternatives to medication to him.   The trial judge was familiar with this evidence."   *Id.*, 366 Wis. 2d 1, ¶95 (S. Abrahamson, J., concurring).   In contrast here, the hearings on the recommitment and the medication petitions were heard two weeks apart by different judges.

¶22   Second, in *Christopher S.*, our supreme court noted that the testifying doctor's "report also tracked the statutory language."   *Id.*, 366 Wis. 2d 1, ¶55.   Our review of the record here shows that the doctor's report was not discussed in any detail during the hearing.   Our review of the report shows it tracks the statutory language when it discussed involuntary medication and Dan's competence to refuse that medication.   However, the report does not provide any greater detail into the doctor's efforts to explain the "particular" prescribed medications to Dan.

¶23   *Christopher S.* did not overrule *Melanie L.*; furthermore, that decision did not reduce a petitioning county's burden of proof.   Our supreme court provided that for a county to satisfy the requirements of WIS. STAT. § 51.61(1)(g)4., the involuntary medication "hearings cannot be perfunctory under the law.   Attention to detail is important."   *Melanie L.*, 349 Wis. 2d 148, ¶94.   It reminded the petitioner counties not to expect that the circuit court in a chapter 51 proceeding "will automatically approve an involuntary medication order, even though the person before the court has chosen a course of action that

13

the county disapproves." ***Id.*** It is under this reasoning that the circuit court's order cannot stand because the testimony elicited at this hearing was generalized and perfunctory.

¶24 We conclude that the County failed to prove by clear and convincing evidence that Dan was given a reasonable explanation of his medications, including disadvantages of the "particular medications" she prescribed or any explanation of alternatives to the chosen medications. Dr. Anderson's testimony regarding Dan's prescribed medications and her recitation of facts did not show that Dan was given a reasonable explanation. Dr. Anderson's testimony did not address the advantages, disadvantages, and side effects of two of the medications, Haloperidol and escitalopram, in an adequate manner.

## CONCLUSION

¶25 We reverse the circuit court. We conclude that the County failed to prove that Dan was given a reasonable explanation of the advantages, disadvantages, and alternatives to his prescribed medications for his mental illness in order to make an informed choice as to whether to accept or refuse the medication. Without the County proving that a reasonable explanation was given to Dan, we further conclude that the County has not shown by clear and convincing evidence that Dan was "substantially incapable of applying" or "incapable of expressing" an understanding of those matters. The County did not overcome Dan's presumption of competence to make an informed choice to refuse medication. *See **Melanie L.***, 349 Wis. 2d 148, ¶96. Accordingly, we remand this

case to the circuit court with directions to vacate the order for involuntary medication and treatment.[13]

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[13] Although it has been established that the reversal of a commitment order does not require remand when the circuit court has lost competency to proceed, Dan's commitment order was not reversed. *See **Sheboygan Cnty. v. M.W.***, 2022 WI 40, ¶36, 402 Wis. 2d 1, 974 N.W.2d 733. Therefore, we remand with directions to vacate the medication order.