COURT OF APPEALS
DECISION
DATED AND FILED

April 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP2094-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2000CF76

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

HARLAN M. SCHWARTZ,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Douglas County: GEORGE L. GLONEK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Harlan Schwartz appeals an order denying his motion for sentence modification. Schwartz argues that he is entitled to sentence

modification based on an alleged new factor—namely, his assistance in the prosecution of a fellow inmate. We conclude, as a matter of law, that Schwartz has failed to establish the existence of a new factor by clear and convincing evidence. We therefore affirm.[1]

## BACKGROUND

¶2    In 2000, the State charged Schwartz with two counts of arson, one count of possessing a firebomb, and one count of recklessly endangering safety, all counts as a party to the crime. As we explained in our decision on Schwartz's direct appeal, the charges against Schwartz and his co-defendant, William Teas, arose out of two incidents involving the then-Douglas County district attorney—an attempt to burn the district attorney's garage and a subsequent firebombing of the district attorney's home. *See State v. Schwartz*, No. 2002AP161-CR, unpublished slip op. ¶2 & n.2 (WI App Sept. 17, 2002).[2] "Neither [Schwartz nor Teas] contested the underlying facts regarding their participation in the incidents, but they instead proceeded to trial with a coercion defense, claiming they were in imminent fear for their lives and the lives of their families based on threats by

---

[1] Schwartz also claims that he is entitled to sentence modification based on a second alleged new factor: his participation in the Department of Corrections' Reaching Youth Through Education (R.Y.T.E.) program. Schwartz concedes, however, that under this court's decision in *State v. McDermott*, 2012 WI App 14, 339 Wis. 2d 316, 810 N.W.2d 237, his participation in the R.Y.T.E. program does not constitute a new factor. Schwartz also concedes that this court is bound by *McDermott*. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997). Schwartz therefore asserts that he raises his argument regarding the R.Y.T.E. program "solely to preserve the issue for Supreme Court review." Under these circumstances, we need not address the merits of Schwartz's argument regarding the R.Y.T.E. program.

[2] We cite our prior opinion in *State v. Schwartz*, No. 2002AP161-CR, unpublished slip op. (WI App Sept. 17, 2002), not as precedential or persuasive authority, but to provide relevant background information regarding Schwartz's case. For purposes of this appeal, the underlying facts regarding Schwartz's convictions are not disputed.

Alejandro Rivera." *Id.*, ¶2. Rivera was a purported gang leader who had allegedly hired Schwartz and Teas to dissuade the district attorney from proceeding with a murder case against Rivera. *Id.*

¶3      The jury rejected Schwartz's coercion defense and convicted him of the arson and firebomb possession charges. *Id.*, ¶3. The jury acquitted Schwartz of the reckless endangerment charge. *Id.* On the two arson counts, the circuit court imposed concurrent sentences totaling thirty-five years' initial confinement followed by fifteen years' extended supervision.[3] *Id.*, ¶4. On the firebomb possession count, the court imposed a consecutive sentence of two years' initial confinement followed by three years' extended supervision. *Id.* During the two decades since his convictions, Schwartz has pursued a direct appeal, a postconviction motion under WIS. STAT. § 974.06 (2021-22),[4] and a motion for sentence modification, all of which have been unsuccessful. *See Schwartz*, No. 2002AP161-CR, ¶1; *State v. Schwartz*, No. 2007AP425-CR, unpublished slip op. ¶1 (WI App Dec. 27, 2007); *State v. Schwartz*, No. 2015AP144-CR, unpublished slip op. ¶1 (WI App Nov. 10, 2015).

¶4      In July 2022, Schwartz filed the sentence modification motion that is at issue in this appeal. Schwartz claimed that a new factor existed because he had provided substantial assistance to law enforcement in the prosecution of a fellow inmate, David Schroeder, in Waushara County case No. 2015CF96. According to

---

[3] The Honorable Joseph A. McDonald presided over Schwartz's jury trial and sentencing. The Honorable George L. Glonek decided the motion for sentence modification that is at issue in this appeal.

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Schwartz's motion, on June 16, 2015, Schroeder walked up behind another inmate, Nathan,[5] who was watching a softball game at Redgranite Correctional Institution. Schroeder grabbed Nathan, placed him in a chokehold, and stabbed him in the side with a sharpened paintbrush at least seventeen times. At the time, Schroeder was serving a life sentence for a first-degree intentional homicide conviction in a 1988 case.

¶5 According to Schwartz's motion for sentence modification, Nathan "limited his cooperation in the investigation and prosecution" of Schroeder because he did not want to be labeled a snitch. However, during an interview with law enforcement, Schroeder admitted that he had attempted to kill Nathan because he heard from other inmates that Nathan had called him a snitch. In addition to Schroeder's confession, two corrections officers provided statements to law enforcement regarding the attack, in which they identified Schroeder as Nathan's assailant.

¶6 Schwartz and another inmate, who were both present at the softball game, also provided statements to law enforcement regarding the attack. Schwartz's statement did not specifically identify Schroeder as the individual who attacked Nathan. Instead, Schwartz stated that while watching the softball game, he "heard the words, Hey! Hey!" and then "saw someone from another unit cho[]king [Nathan] from behind." Although Schwartz described the choking, he did not mention seeing the assailant stabbing Nathan.

---

[5] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the victim's name.

¶7    Schwartz was one of nine witnesses on the State's witness list for Schroeder's trial.  He was subpoenaed to testify, and a writ was issued for his production.  In response to the State's subpoena, Schwartz wrote to the district attorney's office, confirming that he would "tell the truth and give testimony on what [he] was a witness [to]."  However, Schwartz expressed concern that Schroeder was "going to try and seek out some kind of retribution" against Schwartz's family if Schwartz testified, stating that Schroeder had "somehow gained access to [Schwartz's] personal file with [his] family[']s address among other information."

¶8    Ultimately, Schwartz did not testify against Schroeder because Schroeder pled no contest to misdemeanor battery, as a repeater, pursuant to a plea agreement.  At Schroeder's sentencing in July 2016, the prosecutor noted that Schroeder was serving a sentence for first-degree intentional homicide and would not be eligible for parole until July 2023.  During his allocution, Schroeder referenced the fact that he did not anticipate being released from prison and that, as a result, any additional time that the sentencing court imposed on the misdemeanor battery charge was "of no consequence[] to [him]."  The court imposed the maximum sentence of eighteen months' initial confinement followed by six months' extended supervision, consecutive to any other sentence.

¶9    In his motion for sentence modification, Schwartz argued that his assistance to law enforcement in the prosecution of Schroeder was a new factor warranting sentence modification under *State v. Doe*, 2005 WI App 68, 280 Wis. 2d 731, 697 N.W.2d 101.  The circuit court disagreed.  First, the court concluded that Schwartz had not established the existence of a new factor by clear and convincing evidence.  Second, the court determined that even if a new factor existed, it did not justify a modification of Schwartz's sentence.  The court

therefore denied Schwartz's motion for sentence modification, and Schwartz now appeals.

## DISCUSSION

¶10 A circuit court may modify a defendant's sentence based upon the defendant's showing of a new factor. *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. To prevail, the defendant must demonstrate the existence of a new factor by clear and convincing evidence. *Id.*, ¶¶36, 38. A new factor is a fact or set of facts that is highly relevant to the imposition of sentence but was not known to the court at the time of the defendant's original sentencing, either because it was not then in existence or because it was unknowingly overlooked by all of the parties. *Id.*, ¶40. Whether a fact or set of facts constitutes a new factor is a question of law that we review independently. *Id.*, ¶33.

¶11 If the defendant demonstrates the existence of a new factor, the circuit court must exercise its discretion to determine whether that new factor justifies modification of the defendant's sentence. *Id.* However, "if a court determines that the facts do not constitute a new factor as a matter of law, 'it need go no further in its analysis' to decide the defendant's motion." *Id.*, ¶38 (citation omitted). Here, we agree with the circuit court that Schwartz has failed to establish the existence of a new factor by clear and convincing evidence. Accordingly, we need not address the court's discretionary determination that, even if Schwartz's assistance to law enforcement did constitute a new factor, sentence modification was not warranted.

¶12 "[A] defendant's *substantial and important* assistance to law enforcement after sentencing may constitute a new factor that the [circuit] court can take into consideration when deciding whether modification of a sentence is

warranted." ***Doe***, 280 Wis. 2d 731, ¶1 (emphasis added). This approach "promotes sound public policy" by encouraging "those already sentenced who possess and can provide valuable information to law enforcement to assist in ferreting out and curtailing crime." ***Id.*** ¶10. A court should consider five factors when determining whether a defendant's assistance to law enforcement constitutes a new factor for purposes of sentence modification:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his [or her] family resulting from [the defendant's] assistance;
>
> (5) the timeliness of the defendant's assistance.

***Id.***, ¶9 (alterations added; citation omitted).

¶13 Applying the ***Doe*** factors in the instant case, we agree with the State and the circuit court that Schwartz's assistance to law enforcement does not constitute a new factor. Regarding the second and fifth ***Doe*** factors, the State does not "question the truthfulness, reliability, or timeliness" of Schwartz's assistance to law enforcement in the prosecution of Schroeder. We agree with the State, however, that the remaining three factors show that Schwartz's assistance does not qualify as a new factor.

¶14 The first and third ***Doe*** factors, which are related, pertain to the significance, usefulness, nature, and extent of a defendant's assistance to law

enforcement. *See id.* In evaluating these factors, a comparison of Schwartz's assistance with the assistance provided by defendants in other cases is instructive.

¶15 In *Doe*, following his sentencing, "the defendant provided information to law enforcement that solved a murder that had previously been considered an accident." *Id.*, ¶4. "The murderer was convicted almost entirely on information supplied by the defendant." *Id.* Under those circumstances, we implicitly concluded that the defendant had established the existence of a new factor, and we remanded to the circuit court to decide whether sentence modification was warranted. *Id.*, ¶10.

¶16 We addressed a similar issue in *State v. Boyden*, 2012 WI App 38, 340 Wis. 2d 155, 814 N.W.2d 505. Following his arrest, Boyden provided "material information regarding the criminal activity of an individual (Alvin Fouse III) and his drug trafficking gang." *Id.*, ¶2. The assistance included "accompanying law enforcement as they drove in and around Racine to identify locations used by Fouse and his associates." *Id.*, ¶14. Based on Boyden's assistance, law enforcement obtained a search warrant for premises belonging to Fouse and recovered "firearms, cocaine, drug paraphernalia, documents, gang-related materials, a computer and a bulletproof vest." *Id.*, ¶3. Fouse was subsequently convicted of federal drug trafficking charges, and an assistant United States attorney characterized Boyden's assistance in Fouse's case as "significant and useful." *Id.*, ¶¶3, 14.

¶17 In opposing Boyden's motion for sentence modification, the State did not dispute that Boyden's assistance to law enforcement was substantial. *Id.*, ¶¶15-17. Instead, the State argued that *Doe* did not "apply to presentence assistance, the fruits of which are not realized until after sentencing." *Boyden*,

8

340 Wis. 2d 155, ¶15. We rejected that argument and remanded the matter "for the postconviction court's consideration of Boyden's [sentence modification] motion in light of … the factors set forth in *Doe*." *Boyden*, 340 Wis. 2d 155, ¶18.

¶18    Because the *Doe* factors are based on a federal sentencing guideline, *see Doe*, 280 Wis. 2d 731, ¶9, federal cases addressing that guideline also aid in our analysis. For instance, in *United States v. Smith*, 359 F. Supp. 2d 771, 774 (E.D. Wis. 2005), the defendant "zealously assisted the government, and his cooperation proved enormously useful, leading to multiple arrests and convictions." Among other things, the defendant assisted in the investigation and conviction of an illegal firearms dealer; persuaded "an individual wanted for felony theft to turn herself in"; "provided information that enabled the government to obtain a search warrant, and as a result to discover cocaine, guns and cash, and to convict the owner of these items"; "provided information that led to the apprehension of a fugitive with multiple outstanding warrants"; "provided information that led to the arrest of one of Milwaukee's most wanted criminals"; participated in controlled drug buys; and "obtained admissions from a murder suspect to two shootings" while wearing a wire. *Id.* at 774-75. The defendant's "highly significant and useful" cooperation led to a downward "departure of 10 levels" on his federal sentence. *Id.* at 775-76.

¶19    In *United States v. Samaras*, 390 F. Supp. 2d 805, 806, 808 (E.D. Wis. 2005), the defendant provided information on a large-scale coupon fraud scheme in which he had been a participant, as well as "other criminal activity in his neighborhood, including possible firearms violations, possession of counterfeit currency, and a business suspected of wrongdoing." "[W]orking in an undercover capacity," the defendant "continued to cash checks for scheme members, allowed his store to be rigged with sound and video equipment, and wore a wire while

engaging in a conversation with a suspect in other criminal activity." *Id.* at 808. The government "considered [the] defendant's information significant in securing guilty pleas" from other individuals involved in the coupon scheme. *Id.* Based on the defendant's cooperation, the sentencing court reduced his "offense level by 4." *Id.*

¶20    In *United States v. Goodman*, 556 F. Supp. 2d 1002, 1014 (D. Neb. 2008), the defendant "provided the names of several methamphetamine suppliers to law enforcement," and his cooperation "resulted in the lengthy incarceration of a large-scale methamphetamine manufacturer and distributor and in the eradication of a dangerous meth lab." The sentencing court stated that the defendant had "clearly provided significant useful information to law enforcement," which entitled the defendant to "a departure of at least fifty percent from the low end of the [federal sentencing guidelines] range." *Id.*

¶21    We agree with the State that Schwartz's assistance to law enforcement was not "in the same ballpark as the cooperation in the cases described above." The defendant in *Doe* helped to solve a murder, which authorities had previously believed to be an accident. The defendants in *Boyden* and *Goodman* helped to dismantle large-scale drug operations. The defendants in *Smith* and *Samaras* worked undercover to expose and convict multiple criminals. In contrast, Schwartz assisted in the battery prosecution of a prison inmate who was already serving a life sentence for first-degree intentional homicide.

¶22    Furthermore, as part of his assistance, Schwartz wrote a seven-sentence statement that did not even name Schroeder as the assailant in Nathan's attack. Although Schwartz was willing to testify at Schroeder's trial, his testimony would not have been crucial to obtaining a conviction, even absent

10

Schroeder's guilty plea, given that Schroeder confessed to the attack and two corrections officers and another inmate witnessed it. In light of the significant evidence against Schroeder, the value of Schwartz's testimony would have been minimal. This factor distinguishes the instant case from *Doe*, *Boyden*, and *Samaras*, where the defendants' assistance was instrumental in obtaining criminal convictions. Moreover, in both *Boyden* and *Samaras*, the government expressly acknowledged the substantial value of the defendants' assistance. *See Boyden*, 340 Wis. 2d 155, ¶14; *Samaras*, 390 F. Supp. 2d at 808. The State has not made a similar acknowledgement here.[6]

¶23 Additionally, we observe that the defendant's assistance in *Goodman* resulted in a ten-year sentence for a methamphetamine manufacturer and distributor. *Goodman*, 556 F. Supp. 2d at 1006. In *Boyden*, the defendant assisted in a prosecution that resulted in a sentence of twenty-seven and one-half years. *Boyden*, 340 Wis. 2d 155, ¶3. In *Doe*, the defendant assisted in obtaining a

---

[6] In his brief-in-chief, Schwartz asserts that in the circuit court, the State "was forced to admit that Schwartz's cooperation was valuable." To the contrary, in its response to Schwartz's motion for sentence modification, the State actually argued that "[t]he value of [Schwartz's] cooperation is nowhere near the value of the information provided by Doe." The State further argued, "The value and usefulness of [Schwartz's] cooperation is minimal, not substantial. It is certainly not cooperation of such significance that a modification of his sentence for the very serious conduct for which he was convicted is warranted."

Schwartz also asserts that the police "certainly" thought that his cooperation was valuable "since they sought out and memorialized his statement regarding what happened." In a similar vein, Schwartz contends that the prosecutor in Schroeder's case must have thought that Schwartz's assistance was valuable "since he insisted on naming Schwartz on his witness list." As the State aptly noted in its response to Schwartz's motion for sentence modification, "it is nothing out of the ordinary when a prosecutor puts on his or her witness list the name of each and every eyewitness to a crime; that [Schwartz] was on [the] witness list is not in and of itself dispositive proof that his testimony would be of extraordinary or substantial value." Similarly, the fact that the police took a statement from Schwartz—an eyewitness to Nathan's stabbing—is not necessarily indicative of law enforcement's opinion as to the value of Schwartz's assistance.

homicide conviction, which likely carried a substantial sentence. *Doe*, 280 Wis. 2d 731, ¶4. In comparison, Schroeder's prosecution yielded a prison sentence of only eighteen months, consecutive to a life sentence that Schroeder was already serving.

¶24 Under these circumstances, the significance, usefulness, nature, and extent of Schwartz's assistance to law enforcement do not support a conclusion that Schwartz provided "substantial and important" assistance in the prosecution of Schroeder. *See id.*, ¶1. As such, the first and third *Doe* factors do not weigh in favor of a determination that Schwartz's assistance constitutes a new factor for purposes of sentence modification.

¶25 Nor does the fourth *Doe* factor support a determination that a new factor exists. Under the fourth factor, we must consider any injury suffered by Schwartz, or any danger or risk of injury to Schwartz or his family resulting from Schwartz's assistance to law enforcement. *See id.*, ¶9. There is no evidence that either Schwartz or his family suffered any actual injury as a result of Schwartz's assistance in Schroeder's prosecution. And, while it is undisputed that Schwartz exposed himself to some level of risk by assisting with Schroeder's prosecution, as noted above, Schwartz was not a crucial witness in Schroeder's case, nor did he testify at any of Schroeder's court proceedings. Moreover, Schwartz did not participate in high-risk forms of cooperation, such as making controlled drug buys or eliciting incriminating statements while wearing a wire. *C.f. Smith*, 359 F. Supp. 2d at 775 ("By engaging in such high risk forms of cooperation as making controlled buys and wearing a wire, defendant exposed himself to serious risk of injury from many dangerous persons."). On these facts, we do not view the fourth *Doe* factor as supporting a determination that Schwartz's assistance to law enforcement qualifies as a new factor.

¶26    Based upon our consideration of the ***Doe*** factors, we—like the circuit court—conclude that Schwartz has failed to establish the existence of a new factor by clear and convincing evidence.  In arguing to the contrary, Schwartz emphasizes that in the circuit court, the State stipulated to the factual allegations in his motion for sentence modification.  Based on that stipulation, Schwartz asserts that "the 'clear and convincing' burden of evidentiary proof is satisfied."  This argument is meritless.  A stipulation to the underlying facts is not tantamount to a stipulation that those facts meet the legal standard for a new factor by clear and convincing evidence.

¶27    Schwartz also argues that the circuit court erred by "ignor[ing] the legal standards … established in ***Doe***" and instead "limiting [***Doe***] to its specific facts."  He contends that the ***Doe*** court "did not hold that the specific circumstances in that case were necessary for a finding of substantial assistance." The circuit court did not, however, conclude that Schwartz had failed to establish a new factor simply because the facts of Schwartz's case were not identical to those in ***Doe***.  Rather, the court applied the ***Doe*** factors and compared the facts of this case to those in ***Doe*** and ***Boyden*** in analyzing whether Schwartz had met his burden to show the existence of a new factor.  We have done the same on our de novo review.  There is nothing improper about comparing the facts of one case to those of previous cases to determine whether a particular legal standard has been satisfied.

¶28    Finally, Schwartz suggests that regardless of whether he satisfied the ***Doe*** test, his assistance to law enforcement qualifies as a new factor because it is "highly relevant to the sentence imposed."  He emphasizes that the sentencing court characterized his offenses as an "attack on the criminal justice system." According to Schwartz, "If it is important to severely punish those who negatively

13

impact the criminal justice system[,] then … it is equally important to acknowledge the contributions of those who, like Schwartz, positively impact that same system despite very real risks of harm to themselves and their families."

¶29    We reject this argument because ***Doe*** clearly held that in order to qualify as a new factor for purposes of sentence modification, a defendant's assistance to law enforcement must be "substantial and important." ***Doe***, 280 Wis. 2d 731, ¶1. It therefore follows that when a defendant's assistance to law enforcement is not substantial and important, it cannot qualify as a new factor— that is, a fact or set of facts that is *highly relevant* to the imposition of sentence but was not known to the court at the time of the defendant's original sentencing. *See* ***Harbor***, 333 Wis. 2d 53, ¶40. ***Doe*** set forth the factors that a court is to consider when deciding whether a defendant's assistance to law enforcement is substantial and important enough to qualify as a new factor. ***Doe***, 280 Wis. 2d 731, ¶9. Both the circuit court and this court have applied those factors and have concluded that Schwartz's assistance to law enforcement is not a new factor. That conclusion ends our analysis. Schwartz cites no legal authority in support of the proposition that assistance to law enforcement that is not substantial and important under the ***Doe*** factors can nevertheless qualify as a new factor for purposes of sentence modification merely because it may provide some positive impact to the justice system.

   *By the Court.*—Order affirmed.

   This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.